TOWN OF WATERVILLE, petitioners, *vs.* COUNTY COMMISSIONERS OF KENNEBEC COUNTY.

*Regular session of county commissioners—what is. Legislature—constitutional authority of, to apportion expense of erecting bridges.*

A session of county commissioners held by adjournment from a regular session, is a "regular session" within the meaning of R. S. c. 18, § 1.

The legislature may, by private statute, authorize county commissioners to lay out a highway across a river running between two towns, and apportion the expense of erecting and maintaining the bridge upon the towns, in proportion to their respective State valuations.*

This court will not declare such a statute invalid, as being unreasonable, and hence in contravention of Art. IV. Part III. § 1, of the constitution of this State, when it is not made to appear that it operates unequally or oppressively.

ON REPORT.

PETITION for a writ of prohibition.

The petition, signed by the town agent and selectmen of the town of Waterville, specially instructed thereto by a vote of the town, alleged substantially, that in February 1870, a notice from the county commissioners, dated Feb. 9, 1870, upon a petition (rep-

---

*Act of Jan. 21, 1870.

SECT. 1. The county commissioners of Kennebec county are hereby authorized, if they deem public convenience and necessity require it, to lay out a highway across the Kennebec river, between the towns of Waterville and Winslow, and terminating in some highway already existing in each of said towns.

SECT. 2. The existing laws in relation to the laying out of highways shall govern them in their proceedings, except that there shall be no appeal from their

resenting that public convenience and necessity demanded a bridge across Kennebec river, near Ticonic Falls, between the towns of Waterville and Winslow, and praying that a free bridge be built without unnecessary delay, in accordance with an act of the legislature, approved Jan. 21, 1870), was served by copy upon the town clerk; that the act of the legislature (set out in terms) is without precedent, by attempting to impose heavy and unjust burdens upon Waterville, wholly unlike those imposed upon any other town; that it attempts to take Waterville out of the operation of the general laws of the State; to compel Waterville to convert a toll-bridge into a free bridge, and to pay more than three-fourths of the entire expense; and to build more than one-fourth of said bridge upon the territory of Winslow; to deprive Waterville of the right of appeal from the decision of the county commissioners under the general laws, without repealing the general law, but leaving it in full force for the benefit of all other towns; that said act is arbitrary, oppressive, and grossly unjust, and that the petitioners are advised and they believe it to be unconstitutional and void.

That the petition, under which the county commissioners pro-

decision, in laying out or in refusing to lay out such highway. And they may make return of their doings at any adjourned session, and enter the same of record at once; and when such return is made, said towns may proceed at once to construct said highway, if the same has been laid out.

SECT. 3. If said commissioners shall determine to lay out said highway, they shall also determine the proportion of the expense of erecting and maintaining the bridge across said river, to be borne by each of the towns of Waterville and Winslow, which expense shall be borne by said towns in proportion to their respective State valuations of 1870, and of the subsequent State valuations. Such determination shall be included in their record, and be binding upon said towns, until changed by authority of the legislature.

SECT. 4. The selectmen of said towns are empowered, in case such highway shall be laid out, to contract for the erection of such bridge on behalf of their respective towns jointly ; but each town shall be liable for its proportion of the expense thereof and no more. Said towns are authorized, at any meeting called for the purpose, to raise or hire money for defraying the expense of erecting the bridge.

SECT. 5. If the selectmen of said towns fail to contract for the erection of the bridge, within such time as the commissioners shall fix, the commissioners shall proceed in the manner provided in section 27 of chapter 18 of the revised statutes.

fessed to act, was not presented at any regular session, but at an adjourned session; and that these petitioners at the time appointed for the pretended hearing on said petition filed a written protest against the jurisdiction of the commissioners which they totally disregarded.

That these petitioners notified the commissioners that they claimed the right of appeal from their decision under the general law; that it was disregarded, and the commissioners proceeded to require and order them to contract by May 16, 1870, to build said bridge.

The answer admitted the facts alleged, but did not admit the private act of Jan. 21, 1870, to be unconstitutional, nor that the petition under which the commissioners acted was not entered at a regular session, but on the contrary the respondents allege, that said petition was presented at the regular December session, held by an adjournment thereof on the 9th day of February, 1870.

That at the April session of the county commissioners, held by adjournment on May 17, 1870, D. L. Milliken and others filed a petition for the appointment of an agent to construct the bridge, on the ground that the town had refused to contract for the building of the bridge, and notice returnable thereon May 26, 1870, when said towns not offering to show cause why they should not thus contract, and it appearing that Waterville refused so to do, the county commissioners appointed one Phelps as such agent, to complete the bridge by May 1, 1871; that the agent, after due notice, on June 16, 1870, contracted with certain persons named to erect and complete said bridge by May 1, 1871, for $30,000, which contract was duly approved by the commissioners June 17, 1870; that said contractors, at the date of this answer, were at work erecting said bridge.

In addition to the facts set forth in the petition and answer, the parties admitted that—

The regular sessions of the county commissioners for Kennebec county were fixed, by statute, on the third Tuesday of December, April, and August; that the regular session for December, 1869, began on the third Tuesday, and was adjourned from January 5th,

to Feb. 9, 1870; that the petition on which the highway and bridge were located was drawn and presented after the passage of the act of Jan. 21, 1870, and on or before Feb. 9, 1870.

The width of the river between Waterville and Winslow was between 550 and 600 feet; that the records of the county commissioners and all other papers and documents on the commissioners' files, touching the premises, should be admitted.

The March term, 1870, of the supreme judicial court for Kennebec county, adjourned *sine die*, April 13, 1870, and the report of the county commissioners, locating the way and bridge, was made April 21, 1870.

Service of this petition was made on respondents May 16, 1870, by copy and of order of court; and that, notwithstanding such service, the respondents proceeded to appoint an agent, and made the contract for building the bridge set forth in the answer, and that its construction was still going on at the time of the trial of this petition.

Upon the petition, answer, and facts agreed, the court to enter such judgment as shall be in accordance with the law of the case.

*D. D. Stewart & S. Heath,* for the petitioners.

*Lewis* v. *Webb,* 3 Greenl. 336; *Holden* v. *James,* 11 Mass. 405; Opinion of Justices, 4 N. H. 565, 568; Picquet, Appellant, 5 Pick. 68, 69, 70, 71; *Durham* v. *Lewiston,* 4 Greenl. 143; *Portland Bank* v. *Apthorp,* 12 Mass. 252; *Proprs. Ken. Pur.* v. *Laboree,* 2 Greenl. 290.

*Piper* v. *Pearson,* 2 Gray, 122; *Fisher* v. *McGirr,* 1 Gray, 1; *Greene* v. *Briggs,* 1 Curtis, 66, 311.

As to the remedy, *Harriman* v. *Co. Com. of Waldo,* 53 Maine, 83; 3 Bl. Com. 112, 113; 2 Chit. Gen. Pr. 355, 356; 2 Sellon's Pr. 308, 309, 332; Colby's Pr. 347; *Washburn* v. *Phillips,* 2 Met. 296; *Scollay* v. *Dunn,* Quin. Mass. 75; *United States* v. *Peters,* 3 Dall. 121; *Appo* v. *The People,* 20 N. Y. 540, 541.

1 Saunders, 136, note 2; *Mayo* v. *Jones,* 12 Gratt. 17; *Exparte Williams,* 4 Pike, 537, 543.

Writ of prohibition is a writ of right. *Exparte Smith*, 2 Cromp. M. & R. 753; *Knowles* v. *Holden*, 30 Eng. L. & Eq. 590; *Jackson* v. *Beaumont*, 32 Eng. L. & Eq. 588.

And lies, though an appeal might be taken. *Gould* v. *Gapper*, 5 East, 362; *Chesterton* v. *Farlar*, 7 Ad. & Ell. 713; *Burder* v. *Keley*, 12 Ad. & Ell. 233, 265.

As to the session when the petition for the laying out should be entered. R. S., c. 18, § 15; Stat. of 1871, c. 188, § 2; *Russell* v. *Co. Com. Franklin*, 51 Maine, 384; *Harkness* v. *Waldo Co. Com.*, 26 Maine, 353, is not applicable to a case wherein the whole cause of action arose after the commencement of a regular session. *Parsonsfield* v. *Lord*, 23 Maine, 511.

*A. Libby*, for the respondents.

TAPLEY, J. Two questions arise in this case; one pertains to the validity of an act of the legislature, passed Jan. 21, 1870, upon which these proceedings are founded, and the other concerns the jurisdiction of the county commissioners of the county of Kennebec, in this particular case.

The act in question authorized the county commissioners of Kennebec county, "If they deem public convenience and necessity require it, to lay out a highway across the Kennebec river, between the towns of Waterville and Winslow, and terminating in some highway already existing in each of said towns."

It also authorized them to "determine the proportion of the expenses of erecting and maintaining the bridge across said river, to be borne by each of the towns of Waterville and Winslow, which expense shall be borne by said towns, in proportion to their respective valuations of 1870, and the subsequent State valuations."

It appears by the report that the width of river, between Waterville and Winslow, is between 550 and 600 feet. Where in this space is the dividing line between the two towns does not anywhere appear.

By the general laws of the State, towns are required to construct and maintain ways legally located within their limits; and if they

do not within such time as required by law, upon proper proceedings had, an agent may be appointed to perform the duty at the expense of the delinquent town.

It is suggested in argument that the act of 1870, before alluded to, is void, as being an attempted exercise of power not possessed by the legislature, in that it imposes the burden of making and maintaining this highway upon the two towns of Waterville and Winslow, in different proportions from that which would have been imposed under the general law, and therefore unreasonable.

The expense of the work in controversy is, under the act of 1870, to be borne by these two towns in proportion to their respective valuations. Now whether or not the provisions of the act of 1870 impose upon the petitioners a greater or less burden than would have been imposed under the general law, we cannot say. As before remarked, where the dividing line between these towns is, we have no evidence adduced.

Their boundaries may be described in their several acts of incorporation, but where upon the face of the earth, with respect to this structure, it is, cannot be gathered from those acts.

The expense to be borne by each town, in its mathematical proportions, appears from the report of the commissioners. What the proportion would have been under the general law, we are not informed and have no means of ascertaining.

The particular provision of the constitution, which it is supposed has been disregarded in the passage of the act in question, is that which defines the legislative power. This provision requires it to " make and establish all reasonable laws and regulations for the defense and benefit of the people." Art. IV. Part III. § 1, Constitution of Maine.

This law, it is claimed, is not reasonable.

If it was a question for us, whether or not this law was reasonable as it regards the duties the citizens of this locality owe to each other in opening and maintaining a communication across this river, in view of the benefits it would confer upon each, we have not presented to us the proofs of such facts as would be necessary for .

such an adjudication. We must assume that all such facts were duly presented to and considered by the law-making power, and that they deemed the act reasonable and within the powers conferred upon them by the constitution to enact.

The objection seems to be, that it was a special act passed to meet some real or supposed necessity, in a more equitable manner than could be done under the general law, and it is urged that inasmuch as a general law was in existence, touching the supposed exigencies of this case, any special law which changed the rights and liabilities of any person interested, or suspended, as to him, the general law would be unconstitutional as being unreasonable.

We believe this is the proposition narrowed down to its essential elements.

The act in question does not seek to suspend the general law in its application to the locality in question, or to the parties to the proceeding, so far as relates to making the location or apportioning the expense. The power to proceed under the general law remained as full as before.

It nowhere, in terms or by necessary implication, repeals the existing law or suspends the operation of it. It simply confers new powers upon the commissioners in reference to this particular structure, if they, under this act, "determine to lay out said highway." It deals with a supposed necessity, existing in a particular locality, under such circumstances that the general law fails to meet all the provisions equity and justice require should be made. It finds a locality existing within the limits of two municipal corporations interested in the construction of a way, and requires the expense of making and maintaining it to be paid by this locality, by an equal taxation of the property contained therein, irrespective of the mere divisional line of municipal authority existing between them. Being a locality interested in the public work, in apportioning the burden, it looks rather to the locality than its divisions into municipalities.

The question now recurs, have the legislature no power, in extraordinary cases, to make such rules additional to those in existence as shall do substantial justice between the parties, or must it

leave them to suffer from those inequalities sometimes arising from the application of general rules to all the varying circumstances of life.

We think they are not confined by the constitution to such an unjust rule of action.

The laws they pass must be equal, just, and reasonable. The existence or non-existence of these elements must be ascertained by a reference to the subjects upon which they act, the persons whom they affect, and their relation to such subjects.

No general law can be passed which will operate in the same manner upon every state of facts which may arise under it. Human wisdom has not yet reached that perfection. While the ordinary condition of things lies within the pale of legislative protection, the extraordinary is not excluded, neither must both, to the detriment of both, be crowded under the same enactment. What may be just and reasonable in one case may be most unjust and unreasonable in another.

In *Commonwealth* v. *Newburyport*, 103 Mass. 129, the court say, "Although the general law provides for the maintenance of all roads and bridges by imposing the duty upon each town to support those that are within their limits, yet the legislature may, undoubtedly, by general provision or by special statute, modify the general rule, in particular cases, in order to make the distribution of the burden more equal than it might otherwise prove to be in its operation. This it does by authorizing or requiring the county to assume a part of the expense of certain roads or bridges; thus indirectly imposing upon all the other towns in the county a part of the burden which, by the general rule, would fall upon the town within which the road or bridge was situate; or by authorizing a part of such expense to be imposed upon particular towns near to or benefited by such road or bridge."

The same principle is sustained in the case of *Haverhill Bridge Proprietors* v. *Co. Com. of Essex Co.*, 103 Mass. 120; and again in *Dow* v. *Wakefield*, same vol. p. 267.

Nor is this principle new in the legislature of this State. It is

recognized in all those cases of "village corporations," instituted for the purpose of securing a more perfect construction of streets and sidewalks, in the more populous parts of the towns, for maintaining fire apparatus, night watch and police force, construction of reservoirs and aqueducts, and various matters to improve the social condition of the population, and made more necessary and easily attainable by the density of population.

All these matters were within the powers of the several towns in which those corporations were constructed to provide, but grounded upon the fact that certain portions of the population of these towns were more directly interested in those expenditures than their neighbors, and that it is just and reasonable that they should bear the increased burden, these special laws were passed.

In several instances, the county commissoners have been authorized to build bridges and assess the expense upon the counties. In some of these cases the bridges cross tide waters, and in others, rivers and streams of much less magnitude than that of the Kennebec at the point in question.

There is no law of nature, or law grounded in natural justice, that necessarily confers the duty and obligation of making and supporting such public works, to the people residing within certain municipal divisions. The general law, fixing the liabilities in these cases, is an exercise of a right existing in the legislature to adjust these matters as they deem reasonable and just; and whenever they find an extraordinary case requiring some special provision to secure an equality in "bearing public burdens," we have no doubt it is competent for those to make such provisions, and it is but the exercise of powers necessary for the performance of a duty.

Looking at the act in question, with such other matters as are presented by the court, we discover nothing that would justify us in pronouncing this act of the legislature void.

It is further contended that under the provisions of this act, and the general law relating to the location of highways, the original petition for its location must be presented at a regular session of the county commissioners, and that the petition in this case having been

entered at an adjourned term, the commissioners had no jurisdiction.

The report shows that the " regular session " commenced on the 3d Tuesday of December, 1869, and was adjourned from Jan. 5, 1870, to Feb. 9, 1870, at which time the petition in this case was entered.

This, we have no doubt, was a compliance with the statute, as heretofore construed in several cases. *Harkness* v. *Co. Com. of Waldo*, 26 Maine, 353 ; *Parsonsfield* v. *Lord*, 23 Maine, 511.

*Writ denied.*

APPLETON, C. J. ; CUTTING, KENT, and DANFORTH, JJ., concurred.

BARROWS, J., concurred in the result.

*Mem.* TOWN OF WATERVILLE, APPELLANTS, FROM DECISION OF COUNTY COMMISSIONERS FOR KENNEBEC COUNTY.

APPEAL from the decision of the county commissioners for the county of Kennebec, locating a highway and a bridge across the Kennebec river, between Waterville and Winslow, on April 12, 1870, under a private act of the legislature of Jan. 21, 1870. The town of Waterville appeared before the commissioners at the time of the hearing, and duly appealed from their decision making the location. The commissioners denied the right of appeal and ordered the location to be recorded at the same term (April) at which the report was made, being the next term after said location was made, and ordered the proceedings closed.

For the purpose of bringing the question directly before the full court, the presiding judge at the October term, 1870, of this court, ruled, *pro forma*, that no right of appeal existed, and declined to appoint a committee, and dismissed the appeal. Thereupon the appellants alleged exceptions.

After argument, the full court sustained the ruling at *nisi prius*.