## KRAUS v. LEHMAN ET AL.[*]

[No. 21,212. Filed February 18, 1908. Rehearing denied May 15, 1908.]

1. APPEAL.—*Points Decided.—Searching Record for Reasons to Affirm.*—It is the duty of appellant to point out errors requiring a reversal; and the Supreme Court may and usually will search the record for reasons to affirm the judgment, though the appellee fails to present such reasons. p. 414.

2. CONSTITUTIONAL LAW.—*Counties.—Court-Houses.—Construction. —Conditions Precedent.—Petitions.—Statutes.—Local and Special.* —The act of 1899 (Acts 1899, p. 73, §5903 Burns 1908), providing that it shall be unlawful for the board of commissioners of any county containing over 25,000 population, according to the last census, to construct a court-house, unless petitioned so to do by at least 500 freeholders, violates Art. 4, §22, of the Constitution,

[*]See "A Notable Decision," by Clarence R. Martin, 42 Am. L. Rev., 641.

providing that the General Assembly shall not pass any local or special laws regulating county or township business. pp. 415, 417, 419.

3. CONSTITUTIONAL LAW.—*County Business.—Court-Houses.—Construction.*—The construction of a court-house is "county business" within the meaning of Art. 4, §22, of the Constitution, providing that no local nor special law shall be enacted regulating county and township business. p. 416.

4. COUNTIES.—*Court-Houses.—Boards of Commissioners.—Duties.*—It is the duty of the board of commissioners to erect, where necessary, a court-house, jail, and public offices for the county officers, and to keep same in repair, and their action therein, where not fraudulent, cannot be supervised by the courts. p. 416.

5. CONSTITUTIONAL LAW.—*Local and Special Laws.—Legislative Discretion.*—Article 4, §23, of the Constitution, providing that laws on certain subjects, and on all others where a general law can be made applicable, must be made general, leaves the classification of laws, not general, with the legislature. p. 418.

6. PLEADING. — *Answer. — Unconstitutional Statute.* — An answer founded upon an unconstitutional statute is bad on demurrer. p. 421.

7. APPEAL.—*Transfer.—Objections.—Rehearing.*—Objections to the transfer of a case from the Appellate to the Supreme Court must be made while the case is pending on the petition to transfer, and cannot be made on a petition for a rehearing. p. 422.

8. SAME.—*Transfers.—From Appellate to Supreme Court.—Contravening a Ruling Precedent.*—The Supreme Court will transfer a case from the Appellate Court, where its decision contravenes a ruling precedent of the Supreme Court. p. 422.

9. SAME.—*Transfers.—From Appellate to Supreme Court.—Effect.*—The transfer of a case from the Appellate to the Supreme Court vacates the decision of the Appellate Court, and leaves the case as though it had been appealed directly to the Supreme Court. p. 422.

10. COUNTIES. — *Boards of Commissioners. — Sessions. — Continuances.*—Under §5967 Burns 1908, Acts 1899, p. 343, §50, boards of commissioners must convene on the first Monday of each month, and may, in their discretion, continue in session until the end of such month, if the business requires. p. 425.

11. SAME.—*Commissioners' Records.—Correction by Nunc Pro Tunc Entries.*—Boards of commissioners may correct their records by nunc pro tunc entries, and such entries vacate the prior corrected entries. p. 425.

12. SAME.—*Commissioners.—Adjournments.*—Boards of commissioners have the power, when in regular session, to adjourn from day to day, or to meet upon any subsequent day within such term, and its adjourned meetings so held are valid. p. 426.

13. COUNTIES.—*Council.*—*Appropriations.*—*Annulment of.*—*Resolution.*—An appropriation regularly made by an ordinance of the county council, cannot be annulled or repealed by a mere resolution of such council. p. 427.

14. SAME. — *Court-Houses.* — *Contracts.* — *Appropriations.*—A contract made by the board of commissioners with architects for plans and specifications for a court-house to be erected, is valid, where an appropriation therefor, exceeding the contract price, has been made. p. 428.

From Cass Circuit Court; *John S. Lairy*, Judge.

Claim by Israel Lehman and another against Miami county. From an allowance by the board of commissioners, Milton Kraus appeals. From a judgment for claimants in the circuit court, he again appeals. Transferred from Appellate Court under subd. 2, §1394 Burns 1908, Acts 1901, p. 565, §10. *Affirmed.*

*Bailey & Cole, Antrim & McClintic* and *Robert J. Loveland,* for appellant.

*J. F. Lawrence, Cox & Andrews, McConnell, Jenkines, Jenkines & Stuart* and *Merrill Moores,* for appellees.

JORDAN, J.—An act of the legislature, approved February 21, 1899, is involved in this appeal (Acts 1899, p. 73, §5903 Burns 1908). The act in question is entitled: ''An act concerning the construction of court-houses in counties having a population of more than 25,000 as shown by the last preceding United States census, and declaring an emergency.'' Section one, omitting the enacting clause, is as follows: ''That it shall be unlawful for the board of county commissioners of any county having a population of more than 25,000, as shown by the last preceding United States census, to order or contract for the construction of any court-house in such county unless a petition therefor be filed by at least 500 reputable resident freeholders of said county. Any order or contract made in violation of the provisions of this act, shall be null and void: Provided, that the provisions of this act shall not apply to the relocation and erection of court-houses pursuant to the provisions of an act passed

over the Governor's veto March 9, 1895. Acts 1895, p. 217.''
Section two declares an emergency.

On August 9, 1905, a petition praying for the construction
of a court-house on the public square in the city of Peru, the
county-seat of Miami county, was presented to the board of
commissioners of said county. This petition upon its face
purported to be signed by 573 reputable resident freeholders
of said county. The following are some of the reasons as-
signed therein to show the necessity for building a court-
house: ''(1) The present court-house is fast falling into
a condition of decay, and is now almost untenantable. There
is a constant danger of some part of it giving away, and its
condition constitutes a menace to the safety of all who are
required to occupy it or resort to it for the transaction of
business. To repair it would cost a large sum of money, and
it would still be an old court-house, antiquated in design, in-
commodious in its arrangement, and utterly insufficient in
size for present needs. (2) The present court-house has
not room to accommodate with offices more than one-half the
county officers who are required to keep an office. The coun-
ty sheriff, county assessor, county surveyor, county superin-
tendent and county coroner are all without offices in the
court-house. Nor is there any room for the county commis-
sioners, for library, for witnesses, for consultation nor
rooms for the judge in connection with the court
room, and the only jury rooms are the mansard roof, from
which a jury could not hope to escape in case of fire below.
No alterations or remodeling of the present structure could
remedy these defects or provide the additional rooms neces-
sary for the proper transaction of the county business.''

After this petition had been considered by the board of
commissioners, the board entered of record its finding as fol-
lows: ''Having duly considered said petition, do find that
there is in said Miami county a population of more than
25,000, as shown by the last preceding United States census
of 1900; that said petition is duly signed by more than 500

reputable resident freeholders of said county, and that on account of the inadequate condition of the present structure to meet the wants of the public, and the decaying conditions of the present court-house in said county, a public necessity exists for the construction of a new, modern building and court-house.'' Upon this finding the board of commissioners ordered that a new court-house be constructed on the site of the old one, and that estimates therefor be submitted to the county council of said county at its next regular session in September, 1905, stating the amount required for the construction of said new court-house. On December 18, 1905, after ordering the construction of the court-house, the board of commissioners appears to have entered into a contract with appellees, as architects, to prepare plans and specifications for the construction of the new court-house, and to superintend and direct the building thereof. At its February session, 1906, the board of commissioners of said county ordered that the claim of $2,550, presented by appellee for services in preparing preliminary plans and drawings under the contract hereinbefore mentioned, be allowed. Appellant, Milton Kraus, a resident taxpayer and citizen of the county, upon making the required affidavit, appealed to the Miami Circuit Court from the order of the board allowing appellees' claim. After the case on appeal had reached the latter court, the cause was venued to the Cass Circuit Court, wherein appellant filed an answer to appellees' claim. This answer, among other things, alleged that Miami county has been and is a county within the State of Indiana, having a population of more than 25,000; that on August 10, 1905, a petition was filed by 400 resident freeholders of said county, and no more, praying that the necessary steps be taken for the erection of a modern court-house in Peru, Indiana. It is further averred ''that said board of commissioners, on said day, having considered said petition, made and entered of record a false, erroneous and void entry and order to the effect that such petition was signed by more than 500 reputa-

ble resident freeholders of said county, and ordered that a new court-house be constructed on the site of the old one.'' It was further alleged in the answer ''that the total number of names signed to said petition was 573; that of this number 175 were not at the time of the presentation of said petition resident freeholders of said Miami county, and were not, therefore, lawful petitioners; that of this number twenty-seven had each affixed their names twice to said petition, and had been counted twice in making up said 573 names. Eighty names signed were the names of nonresidents of Miami county. Eight were the names of persons who were dead at the time of the presentation of said petition, and 131 were names of signers who were not resident freeholders of Miami county, Indiana, at said time, leaving but 398 qualified signers to said petition.''

Appellees successfully demurred to this answer, and appellant refused to plead further, but elected to abide by his answer. Thereupon judgment was rendered against him on the demurrer.

From this judgment he prosecutes this appeal, and assigns as error the ruling of the Cass Circuit Court in sustaining the demurrer to his answer.

The theory of appellant, as advanced by his counsel, is that inasmuch as it appears that Miami county has a population of over 25,000, as shown by the census of 1900, the act of 1899, *supra,* is applicable thereto; that, in the absence of the petition required by said act, the order made by the board of commissioners of said county for the construction of the court-house in question is absolutely void; that the board had no authority to enter upon the construction of a court-house or make any contracts in respect thereto; that, therefore, the contract made between the board and appellees is void and no claim for services thereunder is valid or enforceable against the county. Counsel assert that because appellant alleged in his answer that no such petition as the one required by the act in question was presented to the

board of commissioners, signed by the number of freeholders as prescribed by the statute, the board therefore was, under the law, deprived of all power to order the construction of the court-house in question, and hence "the fact, that the board entered of record a false finding, to the effect that the petition so filed was signed by more than the requisite number of reputable freeholders, cannot operate to confer on it the power denied by the statute." Counsel further say that "while such a finding might operate to save the board's decision from being held absolutely void as against a collateral attack, if it is to be considered as exercising judicial functions in said matter, still in a case where its acts and decisions are directly attacked by an appeal, as in this case, the false finding which the board has entered of record cannot avail to confer on it an authority denied to it by the statute.".

By reason of the view which we entertain in respect to the validity of the statute involved, it is not essential that we take up the consideration of appellant's right to assail, as he does under his answer, the order of the board of commissioners for the construction of the court-house in question. It may be said that the record in this case presents the question in regard to the constitutionality of this statute, although its validity has not been controverted in the briefs or arguments of counsel for appellees. Nevertheless appellant, under his assignment of errors, alleges that there is manifest error disclosed by the record in the ruling of the trial court in sustaining the demurrer to his answer, and he therefore demands a reversal of the judgment. Appellees allege that there is no error, consequently the burden is cast upon appellant to establish by the record the error which he has assigned. Appellees are entitled to a decision by this court on every point or proposition which will prevent a reversal of the judgment below upon the errors assigned, although not pointed out in their brief or ar-

gument.  Their mere silence upon the point presented by the
record herein, going to sustain the judgment of the lower
court, will not be regarded as a waiver by them of such
point.  While we do not search the record in a case for
errors not pointed out by the appellant in his brief or argu-
ment, nevertheless we may, and generally do, search the rec-
ord in order to discover points or propositions thereby pre-
sented which will operate to affirm the judgment of the lower
court.  Or, in other words, we are not to ignore that which
the record discloses, if it will prevent a reversal of the judg-
ment.  This rule is well settled by decisions of this court.
*Martin* v. *Martin* (1881), 74 Ind. 207, 209, 210; *Travelers
Ins. Co.* v. *Prairie School Tp.* (1898), 151 Ind. 36; *Wilson* v.
*State* (1901), 156 Ind. 631.

As we view the statute, it is clearly antagonistic to §22,
article 4, of the state Constitution.  Consequently we cannot
ignore its constitutional infirmity merely because ap-
2.  pellees have not assailed it in their briefs.  We are
not unmindful of the well-affirmed rule that all rea-
sonable presumptions must be indulged in favor of the va-
lidity of an act of the legislature, and it is only when its in-
validity appears so clearly and palpably as to leave no room
for a reasonable doubt that it violates some provision of the
Constitution that a court will refuse to affirm or sustain its
validity.  For the reasons hereinafter given we are free to
affirm that we entertain no reasonable doubt as to the in-
validity of this act.  It is declared by §22, *supra,* that "the
General Assembly shall not pass local or special laws in any
of the following enumerated cases, that is to say:  *   *   *
Regulating  county  and  township  business."   Article  4,
§23, emphasizes what the provisions of §22, *supra,* were in-
tended to bring about in respect to laws enacted by the legis-
lature upon cases or subjects therein enumerated, for said
§23 declares that "in all the cases enumerated in the pre-
ceding section, *and in all other cases where a general law*

*can be made applicable,* all laws shall be general, and of uniform operation throughout the State." (Our italics.)

That the constructing of a court-house by a county for county purposes is county business within the meaning of the phrase "regulating county and township business," as contained in §22, *supra,* is sustained and settled by the decision of this court in *Board, etc., v. State, ex rel.* (1904), 161 Ind. 616. That the act of 1899, *supra,* in undertaking to restrict the building of court-houses in counties having the prescribed population, is a regulation of county business, is settled by the decision of *Board, etc., v. State, ex rel., supra.* This court, in that case, in considering what constitutes the regulation of county business, as contemplated by §22, *supra,* said: "To regulate is to direct by rule or restriction." Citing authority.

Section 5989 Burns 1908, §5748 R. S. 1881, makes it the duty of the board of commissioners of every county in this State to cause a court-house, jail and other public offices for the county to be erected and furnished, where such duty has not already been performed, and such board is also required under this section to keep the public buildings of the county in repair. In *Kitchel* v. *Board, etc.* (1890), 123 Ind. 540, in considering this statutory provision, the court said: "It was necessary that the power to determine when the public interests demanded that the court-house in any county should be repaired or rebuilt, or whether it should be superseded by a new one, should be lodged somewhere. The legislature has seen fit to entrust that power to the board of county commissioners, and while the board acts within the discretion committed to it, there is no place for judicial interference, until it is clearly shown that the commissioners are acting fraudulently or corruptly, and in violation of their duty as public officers." See, also, *Robling* v. *Board, etc.* (1895), 141 Ind. 522.

At and prior to the passage of the act of 1899 the right or power to determine whether a court-house should be con-

structed, or whether an old court-house should be re-
2.    placed by a new one, was, under the law, lodged in
the sound discretion of the board of commissioners of
such county.  By the act here involved the board of com-
missioners, in each county of this State having a population
of more than 25,000, as shown by the last preceding census,
is absolutely restricted from ordering the construction of a
court-house and from entering into any contract for its con-
struction, unless, as a condition precedent to such order or
contract, a petition therefor is presented to the board, signed
by at least 500 reputable freeholders of such county, and
"any order or contract made in violation of the provisions of
the act" is declared to be null and void.  This certainly may
be said to be a drastic regulation by the legislature in respect
to the board's taking the initial step in the matter of the
construction of a county court-house.  In all other counties
of the State not having the prescribed population, the board
is left unrestricted and unregulated under the provisions of
this statute in the exercise of its discretionary power in re-
gard to the construction of a court-house.

The legislature, in enacting the statute in question, may
be said, in theory or effect at least, to have divided the nine-
ty-two counties of the State into two classes—the first to be
composed of all counties having a population of over 25,000,
as shown by the last preceding United States census.  All
other counties which were not shown to have the population
required are to constitute the second class.  We judicially
know that by the United States census of 1890, which was
the last census preceding the passage of the act, there were
only twenty-eight counties which had a population of over
25,000.  The remaining sixty-four counties did not have the
required population.  By the United States census of 1900
there were thirty-nine counties which had a population neces-
sary to bring them into the first class.  Each of the remain-
ing fifty-three came within the second class.  As shown by

the census of 1890, Shelby county had a population of 25,454, while Jefferson county, the next highest to Shelby, had a population of 24,507, there being a difference of 947 between these two counties.    It is evident, therefore, that at the time the statute in question took effect on February 21, 1899, it applied to and regulated the action of the board of commissioners of Shelby county in the construction of a court-house, in the event the erection of one was necessary. But it had no application whatever to Jefferson county, although there was a difference of only 947 in the population of the two counties.    If, during the year of 1899, after the taking effect of this act, the court-houses of Shelby and Jefferson counties had each been destroyed by fire, the commissioners of the former county could not have caused another court-house to be erected unless petitioned therefor by 500 freeholders of that county; while, on the other hand, the board of Jefferson county could have proceeded, unrestricted and unregulated by this statute, to replace the court-house so destroyed.    As shown by the census of 1900, Henry county had a population of 25,088, while the population of Bartholomew county was 24,594, a difference of only 494.    Nevertheless the act has no application whatever to Bartholomew county, but operates to restrict and regulate the board of commissioners of Henry county in the matter of the construction of a court-house.    Certainly, in the need for a court-house, there can be no real difference between a county having a population of 24,000 and one having 26,000.    Of course if the legislature were dealing with a classification under §23, supra, then it might be said that the line must be drawn somewhere, and that the question where it should be drawn was one for the determination of the legislature.    Conceding for the sake of argument that in enacting a law upon any subject enumerated in §22, supra, the legislature may resort to a classification, and thereby make a general law within the meaning or contemplation of that section, nevertheless, under such circumstances, there

must be a real reason or necessity for the classification, and the necessity or reason "must inhere in the subject-matter and must be natural and not artificial," and the question as to whether the classification comes within the rule herein asserted would be one reviewable by the courts. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 68 L. R. A. 622; *Edmonds* v. *Herbrandson* (1892), 2 N. Dak. 270, 50 N. W. 970, 14 L. R. A. 725.

We may with propriety inquire what reason or necessity exists in respect to the matter of the construction of a courthouse that the act should be made applicable to some of the counties and not to others. Why the distinction? Can the classification of the counties by population under this statute be said to be one based upon some real and reasonable ground inherent in the subject-matter, one which bears a just and proper relation to the classification as made, or is the classification in question purely arbitrary? That it is merely arbitrary is, in our opinion, beyond controversy. In fact no reason other than the mere artibrary will of the legislature can be suggested for the classification in question. The act is not so framed as to be general or of uniform operation in all of the counties of the State, and its provisions clearly disclose that this was not the legislative purpose in its enactment. It is as effectually local in its character and nature as though at the time of its passage it applied only to one of the ninety-two counties instead of to twenty-eight. It has been repeatedly held by this court, since *Gentile* v. *State* (1868), 29 Ind. 409, that in cases or subjects not enumerated in §22, article 4, of the Constitution, then under that part of §23, article 4, thereof, which we have italicized, it is the exclusive province of the legislature to determine whether a general law can or cannot be made applicable to all parts or localities of the State, and the determination of that question by the legislature is not reviewable by the courts.

In *Town of Longview* v. *City of Crawfordsville, supra;*

in considering the question as to whether an act of the legislature which provided for the extension of corporation boundaries of cities having a population, according to the last preceding United States census, of between 6,000 and 7,000, was special legislation, and therefore violated §13, article 11, of our Constitution, which provides that "corporations, other than banking, shall not be created by special act, but may be formed under general laws," this court said: "It is contended that, as said act applies to all cities having between 6,000 and 7,000 population according to the last preceding census, such classification takes it out of the category of special legislation and makes it a general law. In jurisdictions where classification is permitted by the organic law, it is settled that the same, in order to furnish a basis for legislation that will exempt it from the charge of being special, must be classification which, in the nature of things, suggests and furnishes a reason for and justifies the making of the class. The reason for the classification must inhere in the subject-matter, and the same must be natural, not artificial. Under this rule, neither mere isolation nor arbitrary selection is proper classification." Citing numerous authorities.

In *Lodi Tp.* v. *State* (1889), 51 N. J. L. 402, 18 Atl. 749, 6 L. R. A. 56, the court said: "The rule is, that in any classification for the purpose of a general law, all must be included and made subject to it and none omitted that stands upon the same footing regarding the subject of legislation. To omit one so circumstanced is as fatal a defect as to include but one of a number."

In *State, ex rel.,* v. *Parsons* (1878), 40 N. J. L. 1, in considering special laws, the court said: "Interdicted local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all the class to which they are naturally related; they create preferences and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places

which are not dissimilar in these respects.'' See, also, *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671.

The act of 1899, *supra,* for the reasons herein given, is so clearly a special or local law to regulate county business within the interdiction of §22, *supra,* that further comments and citation of authorities are unnecessary. Certainly the legislature cannot under this section of our fundamental law be permitted to accomplish indirectly that which it cannot do directly. The statute being invalid, upon no view of the case can it afford appellant a basis upon which to predicate his cause of defense to appellees' claim. Therefore, the demurrer to his answer was properly sustained.

Judgment affirmed.

## On Petition for Rehearing.

Jordan, J.—Appellant in this case and also appellant in the appeal of *Macy* v. *Board, etc.* (1908), *post,* 707, have both petitioned for a rehearing in the respective cases. They unite in a joint presentation of the reasons and arguments for a rehearing, hence the questions as the same are herein determined upon the petition now under consideration will control in *Macy* v. *Board, etc., supra.*

Appellant expressly waives the reconsideration of the constitutional validity of the act of 1899 (Acts 1899, p. 73, §5903 Burns 1908) ''concerning the construction of courthouses,'' and predicates his right to a rehearing (1) upon the ground that we erred in sustaining the petition of appellees to transfer the cause from the Appellate Court to the Supreme Court under the second subdivision of §1394 Burns 1908, Acts 1901, p. 565, §10; (2) on the omission or failure of the court to decide certain propositions at the former hearing. We take up these questions in their order.

Counsel argue that the petition filed by appellees to transfer the case from the Appellate Court was insufficient, for

the reason that it did not state the particular grounds relied upon for transfer. If this were true, then appellant should have raised that objection while the petition for transfer was pending. It is too late now to make the objection, and in no event could any deficiency in the petition to transfer the case afford appellant ground for a rehearing. In passing, however, we may suggest that the petition in question assigned as grounds for transfer: (1) That the opinion of the Appellate Court contravened a ruling precedent of the Supreme Court; (2) that a new question of law was involved and decided erroneously. The petition further stated that, "for more particular statements of grounds relied upon, appellees make the following statement." Following this a part of the opinion of the Appellate Court was set out to disclose wherein ruling precedents of the Supreme Court had been contravened, etc. An examination of the opinions given by the Appellate Court in the decision of this cause, both at the original hearing and upon the petition for rehearing, fully disclosed that ruling precedents of the Supreme Court had been contravened. The cause was transferred, not for the purpose of overthrowing the statute involved because of its invalidity, but for the reason that the opinions of the Appellate Court contained wrong declarations of legal principles upon the points therein decided, declarations which contravened ruling decisions or precedents of the Supreme Court. *Barnett* v. *Bryce Furnace Co.* (1901), 157 Ind. 572; *Craig* v. *Bennett* (1901), 158 Ind. 9; *Klein* v. *Nugent Gravel Co.* (1904), 162 Ind. 509.

When the case was transferred the judgment of the Appellate Court was vacated, and the cause was then pending in the Supreme Court in like manner and to all intents and purposes as though it had been appealed directly to the latter court.

The two questions which counsel for appellant assert were passed at the former hearing, without being given consider-

ation, are: First, that the contract between the Board of
Commissioners of the County of Miami and Lehman and
Schmitt (appellees herein), for the preparation of the plans
and drawings for the new court-house, was entered into on
December 18, 1905, at a time when the board was not law-
fully in session. The second question relates to the validity
and availability of appropriations made by the county coun-
cil. Under the contract made on December 18, 1905, be-
tween the board of commissioners and appellees, in regard to
their fees and services as architects, the allowance of $2,550
to appellees was made by the board on February 5, 1906.
From the order of the board making this allowance appellant
Kraus appealed to the circuit court, and from the judgment
of the latter he appealed to the Appellate Court. Upon the
question, that at the time the board made the contract with
appellees it was not legally in session, the following are the
material facts as disclosed by the record: On December 8,
1905, the Board of Commissioners of the County of Miami
was holding its regular December session, as authorized by
section fifty of an act "concerning county business" (Acts
1899, p. 343, §5967 Burns 1908). This section provides that
"in every county in this State there shall be a regular ses-
sion of the board of county commissioners, beginning on the
first Monday of each calendar month, and continuing only
so long as the necessary business of such session absolutely
requires." On December 8 the record of the board's pro-
ceedings, as entered by the county auditor, recites: "It is
hereby ordered by the board that they meet in special ses-
sion on December 15, 1905, and the board adjourns until
court in course." It appears that the board again convened
on December 15, 1905, and some action was taken in regard
to the plans for the new court-house. The caption of its pro-
ceedings, as shown by the record entered on the latter day,
is: "Commissioners' Court in Regular Session, the same
being December 15, 1905." The record further discloses
that after convening on Friday, December 15, the board ad-

journed until December 16. On the latter day the board met and adjourned until Monday, December 18, 1905. At the meeting on this latter date the board and appellees entered into the contract in controversy for the preparation of the drawings and plans for the court-house, and for superintending its construction. Appellees, according to this contract, were to be paid for their fees and services by a percentage as therein fixed and provided. The board again adjourned from day to day until December 20, 1905. At this meeting the board appears to have discovered that the order of adjournment on December 8, 1905, had been incorrectly entered, and, for the reasons as stated, it corrected the same by ordering that the entry of the proceedings had on said December 8, 1905, and the adjourning order as made on that day, be entered *nunc pro tunc* as follows: "The board having under consideration the matter of the contract with Lehman and Schmitt, architects, for the new court-house, and not being fully advised in said matter, for the purpose of fully investigating said Lehman and Schmitt now adjourn the present December term until December 15, 1905. It is therefore now ordered that the board meet in regular session again on December 15, 1905, to finish the business now under consideration pertaining to said contract with Lehman and Schmitt." On December 21 the board again convened pursuant to adjournment, and approved the bond of appellees.

The insistence of counsel for appellant is that the contract between the county and appellees, entered into on December 18, 1905, at the meeting of the board of commissioners held on that day, was void, for the reasons, (1) that "the board of commissioners having adjourned on December 8, 1905, 'until court in course,' was without power to reconvene for any purpose whatever until the first Monday in January, 1906, unless convoked by the auditor; (2) that the order of the board on December 8, 1905, that it meet in special session December 15, 1905, was inoperative and void;

(3) because under section fifty of the county reform law the monthly session of the board terminates with its adjournment without day, and continues only so long as the necessary business of such session absolutely requires.''

It must be remembered that appellant does not make a direct, but a collateral, attack on the proceedings and order of the board of commissioners. There is nothing going to show that the sessions or meetings of the board in controversy were held in defiance of law. The December regular session of the Board of Commissioners of the County of Miami, under §5967, *supra,* might have been continued until the close of that month, provided the necessary business of the session absolutely required. As to whether the necessary business before the board required the continuance of the term until the close of the month was a question for the determination of the board. It is disclosed by the *nunc pro tunc* entry that, during the regular December session, on the 8th day of that month, the board adjourned to meet again in regular session on December 15, and that thereafter successive adjournments or recesses were ordered by the board from day to day until December 21, 1905. Appellant's counsel apparently place much stress upon the entry made by the county auditor on December 8, showing that it was ordered by the board that it meet in special session on December 15, 1905, and that the board then adjourned ''until court in course.'' This entry it appears was not right, and was corrected, as shown, by the *nunc pro tunc* entry ordered by the board for the purpose of making the record of its proceedings speak the truth. So far as the questions involved in this case are concerned, this incorrect entry is of no material influence or effect, for it will be seen that the record of the board of commissioners, as corrected and entered *nunc pro tunc,* disclosed that the board on December 8, 1905, adjourned to meet on December 15, 1905, not in special session, but in regular session, to complete the business under consideration

pertaining to the matter of the employment of appellees.. It is well settled that boards of county commissioners possess the power to correct or supply their records by *nunc pro tunc* entries in order to make them speak the truth. *Tombaugh* v. *Grogg* (1896), 146 Ind. 99; *Everett* v. *Deal* (1897), 148 Ind. 90.

It was for this purpose that the board exercised the power of ordering the *nunc pro tunc* entry as it did. As a general rule, where a record has been entered *nunc pro tunc*, it must be accepted and regarded to the same extent as though it had been entered at the proper time. *Leonard* v. *Broughton* (1889), 120 Ind. 536, 16 Am. St. 347; *Mayer* v. *Haggerty* (1894), 138 Ind. 628; *City of New Albany* v. *Endres* (1896), 143 Ind. 192, and authorities cited.

Looking to and considering the *nunc pro tunc* entry herein it is made manifest that the board of commissioners on December 15, 1905, met pursuant to its order of adjournment, and was lawfully in regular session on that date and also on December 18, 1905. The board, in the absence of some statutory provision to the contrary, had the power, at its regular session, to adjourn from day to day or to adjourn to meet on a subsequent day in such term until the business before it was completed. *Board, etc.*, v. *Brown* (1867), 28 Ind. 161; 7 Am. and Eng. Ency. Law (2d ed.), 982, and authorities cited; 11 Cyc. Law and Proc., 394, and authorities cited.

Such an adjourned meeting operates as a continuation of the former meeting of the board at which the order of adjournment is made, and any business transacted at such adjourned meeting is as legal as though it had been transacted at the meeting or session of which it is a continuation. *Stockton* v. *Powell* (1892), 29 Fla. 1, 10 South. 688, 15 L. R. A. 42, 52; *Butterfield* v. *Treichler* (1901), 113 Iowa 328, 85 N. W. 19; *Town of Waterville* v. *County Commissioners, etc.* (1871), 59 Me. 80; 11 Cyc. Law and Proc., 396.

It follows under the facts and the law applicable thereto

that the Board of Commissioners of the County of Miami legally convened in regular session on December 18, 1905, at which time the contract in controversy was entered into between the county and appellees, and the contract cannot be said to be impressed with any invalidity upon the ground that the board was not lawfully in session at the time it was executed.

In respect to the second question raised by appellant, in regard to the invalidity of the appropriation made by the county council of Miami county, briefly it may be said that it appears that at the regular September session, 1905, of the county council, upon estimates made by the board of commissioners, appropriations were properly made by ordinance for the construction of the new court-house, and authority was also granted for the borrowing of money for that purpose and for the issuing of the bonds of the county. Among these appropriations was one for the sum of $7,000 for the payment of the fees and services of architects in relation to the building of the court-house. This appropriation was made available for the year 1906. At a special or called session of the county council in October, 1905, an attempt appears to have been made by that body to annul or repeal, by a mere resolution, that part of the ordinance appropriating said $7,000. It is settled that the ordinance appropriating the $7,000, adopted by the council at its September session, could not be repealed by passing a resolution, as was done by the county council. If the council had the power to rescind or repeal this ordinance at its special session held in October, it could exercise such power only by an ordinance, and not by a resolution. *Swindell* v. *State, ex rel.* (1895), 143 Ind. 153, 163; *Chicago, etc., R. Co.* v. *Town of Salem* (1906), 166 Ind. 71, and authorities cited; *Ristine* v. *Clements* (1903), 31 Ind. App. 338.

It follows, therefore, that the attempt of the council to repeal by resolution the appropriation of $7,000 was, for the

reasons herein stated, ineffectual and of no avail, and the amount so appropriated by the council stood, on December 18, 1905, at which time the contract in question was made, to the extent of that amount, as an appropriation already made, within the meaning of §5937 Burns 1908, Acts 1899, p. 343, §20, by the council for the payment for the services of architects arising out of and in relation to the construction of the court-house, and was available for such purpose on February 5, 1906, the time the allowance of $2,550 was made to appellees by the board of commissioners. *Board, etc.*, v. *Mowbray* (1903), 160 Ind. 10.

Counsel assail the validity of the additional appropriation of $14,000, made at said special session of the county council, which was to be available in 1905, but it is

14. not essential that we enter into a consideration of their objections interposed to this latter appropriation, for, as we view the question, so far as this case is concerned, the contract in controversy is at least a valid obligation, under §5942 Burns 1908, Acts 1899, p. 343, §25, to the extent of the appropriation of $7,000. *Board, etc.*, v. *Mowbray, supra.*

We are satisfied upon the consideration of all of the material points involved in this cause that appellant has failed to maintain his appeal. Petition for rehearing is overruled.