TEMPLETON v. BOARD OF COMMISSIONERS OF THE COUNTY OF NEWTON.

[No. 21,552. Filed November 23, 1909.]

1. ACTION.—*Agreed Case.*—*Facts.*—*Requisites.*—To entitle a party to relief, the statement of facts, in an agreed case, must disclose a cause of action in favor of such party. p. 233.

2. DRAINS.—*Construction.*—*Failure of Board to Pay for.*—*Mandamus.*—Mandamus does not lie to compel a board of commissioners to pay for the construction of a drain, since the engineer's certificate of completion requires the auditor to draw his warrant therefor. p. 233.

3. MANDAMUS.—*Other Adequate Remedy.*—Mandamus does not lie when there is another adequate legal remedy. p. 234.

4. MANDAMUS.—*Drains.*—*Issuing Bonds for.*—*Requisites.*—Before a contractor for the construction of a drain can mandate the board of commissioners to issue bonds for the payment therefor, he must procure the engineer's certificate of completion of such drain, and present it to the auditor for payment. p. 234.

5. COUNTIES.—*Boards of Commissioners.*—*Records.*—*Corrections.*—*Drains.*—Boards of commissioners may correct mistakes in their records in drainage proceedings by *nunc pro tunc* entries, such entries when made referring back to the time to which they relate. p. 235.

6. DRAINS.— *Construction.*— *Mistakes.*— *Correction.*— *Estoppel.*—Where a contract was let to construct a drain ending at a certain point, the terminus really being at a point farther away, and the board of commissioners corrected the mistake by a *nunc pro tunc* entry, the contractor agreeing with the engineer to perform the remainder of the work at the contract price per cubic yard, the board is estopped to question payment therefor, the landowners having stood by and made no objections to such work. p. 235.

7. DRAINS.— *Construction Contracts.*— *Correcting Mistake in.*—*Notice.*—Where a drainage construction contract, by mistake, described the terminus of the drain at a certain point, when the real terminus was farther on, the board of commissioners has power to

correct the mistake without readvertising for bids for such construction. p. 236.

8. MANDAMUS.— *Issuing Bonds.— Boards of Commissioners.— Drains.*—Boards of commissioners may be mandated to issue bonds for the construction of a public drain. p. 238.

9. APPEAL.—*Reversal.—When Dismissal Without Prejudice.—* Where agreed facts present no case for the plaintiff, on the theory of his complaint, but there appears to be substantial merit in his cause, upon another theory, the Supreme Court may reverse the case and order a dismissal without prejudice. p. 238.

From Newton Circuit Court; *Charles W. Hanley,* Judge.

Action by Henry V. Templeton against the Board of Commissioners of the County of Newton. From a judgment for defendant, plaintiff appeals. *Reversed.* [Transferred from Appellate Court—44 Ind. App. 381.]

*T. B. Cunningham,* for appellant.

*John Higgins* and *Foltz & Spitler,* for appellee.

JORDAN, J.—Appellant and appellee, the Board of Commissioners of the County of Newton, filed and submitted to the Newton Circuit Court an agreed statement of facts under §579 Burns 1908, §553 R. S. 1881. Upon this agreed case the parties requested the court to render such a judgment thereon as the law would warrant, and that justice be had between all the parties concerned. Upon the facts stated, the court made the following entry and judgment: "Come now the plaintiff, by T. B. Cunningham, his attorney, and the defendant, by John Higgins, its attorney, and present to the court an agreed case, and file herein their agreed statement of their cause and of the matter of controversy between them and of the facts connected therewith, together with their affidavit showing said cause and controversy to be real, and which statement is in the words and figures as follows: [here the agreed statement of facts follows.] And the court having seen and inspected said statement, and being duly advised in the premises, finds the law in the case and of said controversy to be: That there is due to the plaintiff, Henry V. Templeton, the sum of $103.06

out of any available funds that may be in defendant's hands arising from the sale of bonds in the W. O. Thompson ditch. If none, that defendant proceeds to sell sufficient amount of bonds to procure funds with which to pay the same as provided by law; and that the plaintiff recover his costs herein.''

Appellant moved that the court modify this judgment as follows: "Comes now the plaintiff in the above entitled cause, and objects to the judgment and order as entered in said cause, and hereby moves that the court modify and change said judgment and order in this, to wit: That there is due to the plaintiff, Henry V. Templeton, the sum of $645.36, payable out of the funds arising from the sale of bonds, for the construction of the W. O. Thompson ditch, and if no funds are available that a peremptory writ of mandate be issued to it commanding defendant to pay said sum of $645.36 out of any available funds that may be on hands, or if none, to cause bonds to be issued as provided by law and sold to raise said funds. Wherefore the plaintiff asks the court so to modify said judgment.''

The court denied this motion to modify, to which ruling plaintiff duly excepted. He appeals, and among other things assigns the following errors: (1) That the court erred in its conclusions of law upon the agreed statement of facts; (2) that the judgment is not supported by the evidence; (3) that the court erred in overruling the motion to modify the judgment.

The following, in brief, may be said to be the facts agreed upon by the parties in this case: At the May term, 1904, of the Board of Commissioners of the County of Newton, W. O. Thompson and others filed a petition praying for the cleaning, deepening and widening of a certain ditch situated in Newton county, Indiana. This ditch was known and designated as the ".W. O. Thompson ditch,'' and was constructed under what is known as the "five-mile ditch law,'' enacted by the legislature in 1891 (Acts 1891, p. 455,

§5690 *et seq.* Burns 1901). At the August term, 1904, of the board of commissioners of that county an amended report, made by the viewers appointed by the board, was approved, and the ditch was by the board of commissioners ordered established. By the original report made by the viewers the outlet of the main ditch was described as being at station 319, and said original report and engineer's specifications so stated, but when the report was referred to the viewers the same was amended by them to show that the outlet was to be carried to station 341, but by inadvertence the engineer's specifications failed to show any part of the ditch between stations 319 and 341, for the reason that that part of the report had been mislaid and had not been copied into the amended report made by the viewers. This error was not discovered at the time the ditch was ordered established by the board of commissioners. Afterwards one Hamilton, the engineer appointed by the board, in advertising to let the contract for constructing the ditch, gave notice in the advertisement that the ditch in question extended from station 0 to station 319, as shown by the engineer's specifications. In pursuance of said advertisement he let the contract for the construction of the entire system of drainage to the appellant herein, at and for the price of ten cents per cubic yard, and thereupon entered into a contract with Templeton for the construction of said drain, which report of the engineer, the contract entered into between him and Templeton, and the bond of said contractor, were all duly submitted to the board of commissioners, and were by that board approved. Templeton, by virtue of his contract, completed the ditch to station 319, but upon the completion of the work to that station it was discovered that the outlet to the ditch was to extend 2,200 feet beyond station 319, and upon investigation the error in the engineer's specification in omitting stations 319 to 341 was discovered.

The cost of the construction of the ditch, as let to Templeton and extending only to station 319, was $15,268.53. The

error was discovered, and at the June session, 1906, of the board of commissioners, a petition was filed by one of the parties affected by the drain, seeking to amend the records of the board of commissioners so as to show that stations 319 to 341 were omitted from the engineer's specifications as approved by the board, and asking to make such entry *nunc pro tunc*, which petition the board granted, and the record was thereby corrected to show that the ditch was established to station 341. By agreement with the contractor, he, under his original contract, completed the work to station 341 at the same price of ten cents per cubic yard. By the viewers' report it was estimated that the total cost of construction would be $19,542.10. On November 1, 1904, the board, as required by law, ordered bonds to be issued, which were sold to the amount of $16,000, and subsequently, on January 1, 1906, the board issued an additional series of bonds, from which the sum of $3,000 was realized. Of the amount realized from the bonds $15,156.57 was paid to the contractor, appellant herein, for the work which he had performed under his contract, the remainder being paid for costs, etc., leaving a balance due to the contractor of $103.06, which was due to him upon the contract as it was originally let, and leaving also unpaid $542.30 for additional work which he had performed in completing the work between stations 319 and 341, making a total due and unpaid of $645.36, and making the total cost of the construction of the ditch, under the contract between appellant and the engineer, $15,880.92. The total cost of the improvement, including the costs of construction, location, damages, bridges, etc., amounted to $19,052.67, being $489.43 less than the cost estimated by the viewers.

At the August term, 1906, of the board of commissioners, R. A. Laury, who had succeeded Hamilton as engineer in the proceedings, filed his final report therein, showing that the ditch was fully completed according to the plans and specifications of the viewers' report, including the addi-

tional work done by the contractor, between stations 319 and
341, and certified in his said report that there was due to
said contractor the sum of $3,595.48. At this time it appears
that there was only $2,950.12 on hand of the funds raised
from the sale of bonds in said ditch proceedings, and this
last-mentioned amount was applied upon the amounts so cer-
tified by the engineer, leaving a balance due to the con-
tractor of $645.36. Of this latter amount $103.06 was due
under the original contract and $542.30 was due for the
work performed by the contractor on the extension of the
work from stations 319 to 341. Said contractor demanded
that the board cause additional bonds to be issued and sold
for the purpose of raising a fund out of which to pay said
amount due to him, which the board refused to do. The
final report made by the engineer to the board of commis-
sioners on August 1, 1906, is as follows:

"To the Honorable Board of Commissioners of the
County of Newton:

The undersigned, appointed by your honors as en-
gineer in the above case, begs leave to file this his final
report in the said cause. I have this day examined
said Thompson ditch and the various branches, and
find that the contractor, H. V. Templeton, has com-
pleted his contract according to the terms thereof, and
should be paid the remaining twenty per cent of the
contract price, together with $216 for tile and $542.30
for excavating from stations 319 to 341.

Total amount of contract...............$15,810.93
Total amount paid on contract.......... 12,215.45

Total amount due to contractor.......... $3,595.48
Respectfully submitted,
R. A. Laury, Engineer."

Among other things contained in the contract between
the engineer and appellant, in respect to the construction
of said ditch, it was provided that the work was to be done
to the satisfaction and acceptance of the engineer in charge
of said work, in the manner as directed by law, and that

the contractor was to be paid upon estimates certified to by the engineer to the auditor of the county. Twenty per cent on the work done was to be reserved until it was fully completed. The money to be paid for the work and labor was to be paid under the provisions and according to the terms of an act of the General Assembly of Indiana, approved March 7, 1891, which is referred to and made a part of the contract. Under the contract between appellant and the engineer it was agreed that the former was to excavate ground, etc., down the stream, or until he arrived at the outlet of the main ditch, and it was further provided therein that when the work was fully completed and inspected by the engineer the full contract price should be paid to said contractor.

The contention of appellant is that under the facts he is entitled to be awarded a writ of mandate against appellee, the board of commissioners, compelling it to allow him for all the work which he had performed, and to issue and sell bonds for the purpose of raising money sufficient to pay what was due to him. On the other hand, counsel for the board of commissioners insist: (1) That the board had no authority, under the law, voluntarily to make itself a party to this proceeding, and to submit an agreed case under §579, *supra;* (2) that under the facts a writ of mandate is not the proper remedy and cannot be maintained; (3) that neither the engineer nor the board of commissioners had authority, as was done by such board and engineer, to enter into a supplemental contract or agreement with appellant that the work of constructing the ditch between stations 319 and 341—the latter being the outlet—should be performed under the original contract at the price of ten cents per cubic yard, at which price it was originally let to appellant. Their insistence is that this part of the construction of the ditch should have been readvertised and relet.

Conceding, without deciding, that the board of commissioners was, under the law, empowered voluntarily to be-

come a party to this action, and as such party submit
1.  the agreed statement of facts, we pass to a consider-
ation of the question as to whether the facts herein
disclose a cause of action in favor of appellant. It is well
settled that the agreed statement of facts, under the section
of the code in question, must disclose a good cause of action
in favor of one of the parties to such proceeding and against
the other. *Gregory* v. *Perdue* (1867), 29 Ind. 66; *Day* v.
*Day* (1885), 100 Ind. 460.

Counsel for appellant does not contend that the facts dis-
close any right of action in his favor against the board of
commissioners, other than the right to be awarded a
2.  writ of mandate against the board, compelling it to
allow appellant's claim for work performed in con-
structing the ditch between stations 319 and 341, and to is-
sue and sell bonds to raise funds for the payment of such
claim. The question arises then, Is there any such a right
of action shown under the facts in this case? In the appeals
in the cases of *Conn* v. *Board, etc.* (1898), 151 Ind. 517, and
*Studabaker* v. *Studabaker* (1899), 152 Ind. 89, the same
statute under which the ditch here involved was constructed
was fully considered and construed in regard to the pro-
cedure of a contractor to secure pay for work performed in
the construction of a ditch. In the case of *Conn* v. *Board,
etc., supra,* a contractor sought to secure a writ of mandate
compelling the board of commissioners to account to him
and pay a claim arising out of work performed by him in
the construction of a ditch. It was held that an action for
mandate, under the facts therein alleged, could not be main-
tained. Under the construction which we accorded the stat-
ute in that case, we pointed out the specific method to be
pursued by a contractor, under the statute in question, in
order to obtain his money for work performed by him un-
der the contract with the engineer. In this latter appeal it
was held, among other things, that where a contractor has
completed his section of a public drain under the provisions

of §5690 *et seq.* Burns 1894 (§5690 *et seq.* Burns 1901, Acts 1891, p. 455), he should notify the engineer, who should inspect the work, and if he finds that it has been completed according to the terms of the contract he should accept it, and issue to the contractor a certificate to that effect, stating the amount due, and such certificate, when presented to the county auditor, authorizes the latter to draw a warrant from the proper funds in the hands of the county treasurer for the payment thereof. See also *Studabaker* v. *Studabaker, supra.*

It was further held in the case of *Conn* v. *Board, etc., supra,* that if the engineer should refuse to issue the certificate, his duty to do so might, in a suit instituted by 3. the contractor, be enforced by writ of mandate. It is well settled by repeated decisions of this court that if a specific remedy is provided by law, by which relief of an aggrieved party may be obtained, mandate will not lie. *Board, etc.,* v. *Branaman* (1907), 169 Ind. 80; *State, ex rel.,* v. *Schmetzer* (1901), 156 Ind. 528.

Upon the facts disclosed by the report of the engineer before set out, appellant should have procured from the engineer a certificate or voucher in order that he 4. might present it to the auditor of the county, and thereby secure a warrant from that official for the money due him, provided there were funds on hand appropriated to the payment thereof. This method, as pointed out in *Conn* v. *Board, etc., supra,* was the proper one for appellant to pursue in order to obtain the money which he claims is due to him. But, under the facts in this case, it does not appear that he applied for and obtained from the engineer any certificate or voucher for such purpose. Consequently he is not in a position to assert that the board of commissioners was in the wrong on account of its refusal to issue bonds, and that, therefore, under the facts, he is entitled to be awarded a writ of mandate to compel the board to issue bonds as provided by the statute in question.

As shown by the facts, by the original report made by the viewers, the outlet of the ditch was described as being at station 319, and the specifications made by the engineer so stated, but this report was referred back to the viewers, and was by them so amended as to show that the outlet of the ditch was to be at station 341, but by mistake or inadvertence the engineer's specifications failed to show any part of the ditch between stations 319 and 341. Thereafter, upon the discovery of this fact, the record of the board of commissioners was, by a *nunc pro tunc* entry, corrected so as to show that the ditch was ordered to be established to station 341, and then by agreement between the engineer and Templeton, he, under his original contract, completed the construction of the ditch to station 341 at the same price of ten cents per cubic yard. That the board of county commissioners may correct its records *nunc pro tunc,* and that such records, when so made, must be regarded and accepted to the same extent as though they had been entered at the proper time, are well-settled principles. *Kraus* v. *Lehman* (1908), 170 Ind. 408.

In this case it does not appear that any of the property owners whose lands have been benefited by the improvement are objecting to appellant's being paid for the work which he performed. In fact, so far as anything appears to the contrary, they were estopped from so doing, as they have silently stood by until the ditch was completed and their lands thereby benefited. Consequently, under the holding of this court in the case of *Board, etc.,* v. *Plotner* (1897), 149 Ind. 116, and authorities there cited, they are not in a position, under the facts, to defeat appellant in recovering his compensation for the work performed. What right or authority then, under the law, has the board of commissioners in this case to defeat appellant, who, as it appears, had obeyed the orders of the board and completed his work according to the requirements of the contract under which the work was let to him by the engineer?

The case of the *Board, etc.,* v. *Newlin* (1892), 132 Ind. 27, involvéd the payment of additional work performed by contractors in the construction of a free gravel road. In that case the contractors performed extra work which was not embraced in the contract, but which was required to be performed by the board of commissioners and its engineer. The complaint in that case was assailed upon the ground that the board of commissioners had no authority to change the contract. This court, in that appeal, speaking by Elliott, J., said: "We regard it as exceedingly doubtful whether, in any case, the board, having ordered and required a change in a contract, is in a situation to defeat a contractor who has obeyed its orders and requirements. It certainly cannot be permitted in such a case as this to repudiate its own acts at the expense of the contractor who has done what it exacted of him and what its engineer required." The decision in the case just cited is quite applicable to this case, for, as shown by the *nunc pro tunc* proceeding, the board ordered the ditch constructed to station 341. Appellant, by a subsequent agreement with the engineer, agreed to perform the additional work between stations 319 and 341, which appears to have been omitted from the specifications, which formed a part of the original contract, by reason of mistake. or inadvertence. This additional work he performed to the satisfaction and acceptance of the board and its engineer. Upon what ground then, under the facts and circumstances, can the board base any right to defeat appellant in a proper proceeding to secure the payment for the additional work which he performed?

The argument of appellee's counsel, that the civil engineer should have given notice or readvertised, and thereupon have relet the additional work to be done between stations 319 and 341, which is shown to have been neces-

7. sary to complete the ditch to its outlet, is without support. It will be noted, as previously stated, that the original contract between appellant and the engineer for the

construction of the ditch provided that the former was to excavate the ground down the stream, or until he arrived at the outlet of the main ditch, which outlet, as the facts disclose, was at station 341. Generally speaking, it may be said that, under the contract, it was contemplated by the parties thereto that the work let to appellant was to extend to the outlet of the main ditch. This work he agreed to perform, but through mistake or inadvertence upon the part of the engineer the specifications described the ditch as extending from station 0 to station 319. There certainly can be no serious question advanced as to the authority of the contracting parties, upon discovering the mistake, to correct the contract, as they did by the subsequent agreement. Upon no view of the case is there any room for asserting, as counsel for appellee do, that the contract for performing the work between stations 319 and 341 should have been relet. Appellee's contention upon this point contravenes the holding of this court in *Ross* v. *Stackhouse* (1888), 114 Ind. 200, which was a street improvement case. Mitchell, J., speaking for the court in that appeal, said: ''The purpose of requiring the letting of contracts for street improvements to be advertised is to secure fair competition, and to enable the common council to let the contract upon the most advantageous terms. 1 Dillon, Mun. Corp. [3d ed.], §468. The advertisement is not to give notice to the property holders, nor does the letting of the contract adjudicate upon or determine in any degree their personal or property rights.'' It is certainly unnecessary for us to advance any further reasons to show that, under the facts, appellant had no right to a writ of mandate, for he has an adequate remedy under the statute, as we have pointed out, under the decisions to which we have referred.

In the case of *Conn* v. *Board, etc., supra,* in construing this same statute, we said: ''Neither do we think it is contemplated by this statute that the commissioners should sit as a board for the purpose of allowing the claims of con-

tractors and ordering their payment out of the fund dedicated to that purpose. The fair inference to be drawn from the provisions of the law involved, when aided by laws of a similar import or kindred character, points to the method or remedy mentioned as the one by which a contractor may obtain pay for services rendered. The engineer appointed by the board may be presumed to be versed in the science of civil engineering, and competent to discover on inspection if the several jobs are completed as required by the contract; and if he finds this to be a fact, the contractor is entitled to his pay, and the engineer should furnish him with the necessary certificate or voucher in order that he may be awarded that which is justly due to him, and for a failure to discharge this duty, this official may be compelled to perform it by a writ of mandate, upon a proper showing in a suit instituted by the contractor. *State, ex rel.,* v. *Bever* [1896], 143 Ind. 488.''

By §§5700, 5702, *supra,* the duty to issue bonds based upon the assessments, in order to raise money to pay the cost and expense of the work, is expressly enjoined upon the board of commissioners. The discharge of this duty, upon a proper showing of facts in a suit by the contractor, may be compelled by writ of mandate. Or, in other words, if necessary to pay the cost and expense of the work, the board, in a suit by the contractor or other persons interested, may be mandated to issue bonds to an amount not exceeding the special benefits assessed against the lands in the taxing district.

We conclude that there was no case presented by the agreed statement of facts. While it is true that appellee is not complaining of the judgment, nevertheless, in order that appellant may be left unprejudiced by the judgment below in pursuing the remedy afforded him by the statute, we are of the opinion that, in the interest of justice, the judgment should be reversed in its entirety

and the cause remanded, with directions to the lower court to dismiss the proceedings, all of which is accordingly ordered.