## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* JOHNSON ET AL.

[No. 7,671. Filed October 18, 1912. Rehearing denied February 14, 1913.]

1. EXECUTION.—*Action to Enjoin Enforcement.—Irregularity in Rendition of Judgment.—Cross-Complaint.*—In an action to enjoin the enforcement of an execution on the ground that no judgment had been rendered, or, that if rendered, the record entry thereof had not been signed, a cross-complaint seeking to cure irregularity in the rendition of such judgment by having the same read in open court and signed by the court *nunc pro tunc,* is a proper pleading and germane to the subject-matter of the complaint. p. 465.

2. APPEAL.—*Review.—Harmless Error.—Overruling Demurrer to Answer.*—Overruling a demurrer to a paragraph of answer, even if erroneous, is harmless, where the finding is for plaintiff on the complaint. p. 466.

3. TRIAL.—*Conclusions of Law.—Conformity to Issues.*—The conclusions of law announced by the trial court are not improper, where they are within the issues tendered by a cross-complaint and the answer thereto, although they may be outside the issues tendered by the complaint. p. 467.

4. JUDGMENT.—*Validity.—Failure to Read and Sign.*—While the rendition of a judgment by the trial court, its entry on the order book by the clerk, and its final approval and authentication by the judge's signature, after it has been read in open court, are separate, independent acts essential to support an execution issued on such judgment, the failure of the court to cause the order book entry to be read in open court, and to sign same, as required by §1450 Burns 1908, Acts 1885 p. 124, will not render the judgment void. p. 467.

5. TRIAL.—*Special Findings.*—*Conclusions of Law.*—In an action to enjoin the enforcement of an execution, where the special findings show that a judgment had been rendered, but that the order book entry had not been read in open court and signed, a conclusion of law that such judgment is valid, but that no execution may issue thereon until the record is read and signed in open court, is not inconsistent with a conclusion that the enforcement of the existing execution should be enjoined.   p. 468.

6. JUDGMENT.—*Rendition During Pendency of Motion for New Trial.*—*Validity.*—A judgment is not void because it is rendered while a motion for a new trial is pending, but such pending motion merely operates to suspend the effect and enforcement of the judgment.   p. 469.

7. JUDGMENT.—*Failure to Read and Sign.*—*Findings.*—*Conclusions of Law.*—*Nunc Pro Tunc Proceedings.*—Where, in an action to enjoin the enforcement of an execution, the special findings show that the judgment on which the execution issued had been rendered, and that it had been properly entered by the clerk, but had not been read and signed, a conclusion of law stated thereon that such judgment and record entry "should be and the same now is read and signed in open court *nunc pro tunc*, and said judgment may now be enforced by proper writ", is not open to the objection that it is a *nunc pro tunc* rendition of the judgment.   p. 469.

8. JUDGMENT.—*Failure to Read and Sign.*—*Reading and Signing Nunc Pro Tunc.*—*Effect.*—Where the only irregularity in the rendition of a judgment consisted of the failure to read and sign the order book entry of same, as required by §1450 Burns 1908, Acts 1885 p. 124, the *nunc pro tunc* reading and signing thereof, as authorized by §1451 Burns 1908, §1331 R. S. 1881, gave to it regularity authorizing its enforcement by execution as of the date of its rendition.   p. 470.

9. JUDGMENT.—*Rendition.*—*Evidence*—*Sufficiency.*—In an action to enjoin the enforcement of an execution, wherein defendant secured a *nunc pro tunc* reading and signing of the judgment, special findings that a judgment was rendered and entered, and that the only irregularity consisted of a failure to read and sign the entry in open court, are sufficiently supported by the evidence, where, besides the testimony of witnesses to the effect that the judgment had been rendered and entered in the order book, there was some record and documentary evidence to support every material part of each and all the findings made by the court.   p. 471.

10. JUDGMENT.—*Nunc Pro Tunc Entries.*—*Evidence.*—As a general rule a *nunc pro tunc* entry cannot be made on oral testimony alone.   p. 476.

11. APPEAL.—*Invited Error.*—Invited error cannot be taken advantage of on appeal. p. 477.

12. APPEAL.—*Review.*—*Harmless Error.*—*Admission of Testimony.*—Error, if any, in the admission of testimony, is not cause for a reversal, where the findings and judgment of the trial court show that such testimony was disregarded. p. 477.

From Pulaski Circuit Court; *Francis J. Vurpillat,* Judge.

Action by The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company against Carl Johnson and another to enjoin the enforcement of an execution. From a judgment against it on a cross-complaint seeking to cure the defect of the judgment on which the execution was issued, by reading and signing the record thereof *nunc pro tunc,* the plaintiff appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*M. M. Hathaway* and *M. Winfield,* for appellees.

HOTTEL, C. J.—This is a suit begun by appellant to enjoin the enforcement of an execution in favor of appellee, Johnson, in the hands of appellee, Sanders, sheriff. Appellee, Johnson, will be referred to as appellee.

The issues of fact in the case were presented by a complaint in two paragraphs, the first of which was dismissed after trial; neither paragraph was denied, but each was specially answered. A demurrer to each answer was overruled. A reply in denial and special replies were filed. After the case had proceeded to trial appellee, over appellant's objection, filed a cross-complaint in two paragraphs. After a motion to strike out each of these paragraphs had been overruled, a general denial was filed, and the trial of the cause concluded. To set out the substance of these various pleadings would extend this opinion to an unreasonable length. We think it sufficient to say that the issue tendered by the complaint was, as expressed by appellant in its brief, "whether any judgment had ever been rendered" in the original action in which the execution was issued.

The issue on the first paragraph of the cross-complaint was whether the trial court in said original action had, in fact, announced and rendered the judgment in said action appearing in the record entry of October 8, 1908, prepared by the clerk of said court, and whether the same should be read in open court and signed by the court *nunc pro tunc*. The second paragraph of the complaint differed from the first, in that it proceeded on the theory that the judgment on which the execution had issued was announced and rendered in open court on October 8, 1908, and had been entered by the clerk under the order of court, and that the court in term, to wit, on October 9, 1908, intending to sign the record of the entire proceedings had on October 8, by inadvertence and mistake, signed the same before the close of the day's proceedings and immediately before the entry containing said judgment here involved. At the request of the parties the court made a special finding of facts with conclusions of law thereon, and entered judgment enjoining appellees "from levying said execution on the property of the plaintiff", and ordered that the judgment rendered on October 8, 1908 (being the judgment in said original action upon which the execution was issued), "be and the same is a valid and subsisting judgment and that the same be read in open court and signed by the judge which is now done and said proceedings on the 8th day of October, 1908, are now read in open court by the judge *nunc pro tunc* which reading and signing are now done in open court."

This appeal is prosecuted from that part of said judgment rendered on the cross-complaint. The errors relied on are: (1) In overruling appellant's motion to strike out the cross-complaint of appellee; (2) in permitting the paper called a cross-complaint to be filed by appellee; (3) in overruling appellant's demurrer to the second paragraph of the answer of appellee to the second paragraph of appellant's complaint; (4) in its second conclusion of law on the facts specially found; (5) in its third conclusion of law on

the facts specially found; (6) in overruling appellant's motion for a new trial; (7), (8), (9), (10) in the rulings of the court on the several specifications of appellant's motion to modify the judgment; (11) in that the cross-complaint does not state facts sufficient to constitute a cause of action.

The facts controlling on the questions involved in the appeal are presented by the court's finding of facts, and are, in substance, as follows: (2) On October 8, 1908, appellant filed in the original action its bills of exceptions Nos. 1 and 2, and its written motion and causes for a new trial, and "on the same day, while this motion was pending and undisposed of, the appellee, by his attorney, moved the court for judgment upon the verdict of the jury", which motion the court at the time sustained, and announced from the bench and rendered judgment on such verdict in favor of appellee for $6,000 and costs; that on October 10, the court overruled the motion for a new trial, and granted appellant ninety days in which to file a bill of exceptions, and appellant then prayed an appeal to the Appellate Court, which was granted on the filing within 90 days of an appeal bond in the sum of $8,000, with the American Surety Company of New York as surety. (3) At the time of the filing of said amended complaint, and subsequent thereto, the court used a bench docket, on which he personally noted in writing minutes or memoranda of the court's proceedings in said cause: that the minutes or memoranda made by the trial court itself upon said bench docket, relative to the proceedings had in said case, and set out in the last preceding finding are in the words and figures following: "Oct. 4. Jury return answer to interrogatories and general verdict in the sum of $6,000. Oct. 8. Dft. files bills of except. No. 1 and No. 2. Deft. also files written causes and motion for new trial. Oct. 10. Motion for new trial overruled and exception and 90 days to file bills of exceptions. Dft. prays an appeal to Appellate Court which is granted upon filing

bond in sum of $8,000 with the American Surety Company as surety within 90 days." (4) The trial court failed to make minutes on its bench docket of the motion for judgment on the verdict, the sustaining of such motion, and the rendition of such judgment, all of which were done by the trial court on October 8, 1908, as shown in finding No. 3; that on that day, after such proceedings were had and judgment rendered, M. M. Hathaway, as one of the attorneys for Johnson, prepared a formal record entry of all the proceedings had in said cause on October 8, "including in such entry the proceedings of which the trial court made minutes on its bench docket as well as those proceedings of which the trial court failed to make such minutes * * * and presented to the judge such formal record entry which was thereupon examined and * * * approved by Judge Nye, the trial court; that such entry so prepared, was placed with the other papers filed in the case, but was not itself marked filed;" that this entry so prepared was afterwards duly entered of record by the deputy clerk of said court, and now appears of record in order-book No. 34, page 402, of the records of Pulaski Circuit Court, and filed at the clerk's office at Pulaski County, Indiana; the record of such proceedings, as so prepared and recorded, is as follows: "Carl Johnson vs. P., C., C. & St. L. Railway Company, No. 7180. Comes now the defendant by counsel and files Bills of Exceptions No. 1 and No. 2 in words following, to-wit; (Insert). Defendant also files written cause and motion for new trial in words and figures following, to-wit: (Insert). Plaintiff now moves the court for judgment on the verdict which motion is by the court sustained. It is therefore ordered, adjudged and decreed by the court that plaintiff recover of and from the defendant the sum of Six Thousand Dollars as and for his damages, together with his costs made and taxed in this cause at $————." (5) The record of the day's proceedings had by the Pulaski Circuit Court on October 8, 1908, appears of record in order-book No. 34, pages

399-403; that such record was never read or signed in open court; that the trial judge, Judge Nye, signed said record in the clerk's office during vacation; that said judge did not sign the record of said day's proceedings at the close thereof, but signed the same on the bottom of page 401, the record of the case of appellee v. appellant, set out in the last preceding finding, and record entries of other cases, appearing after said trial judge's signature. (6) That the clerk of the Pulaski Circuit Court entered said judgment of appellee Johnson v. appellant, set out and referred to in the preceding finding, in judgment docket H, page 235 of the records of the Pulaski Circuit Court, such judgment docket being as follows, to wit: then follows said entry. (7) On December 31, 1908, appellant filed with the clerk of the Pulaski Circuit Court an appeal bond according to the directions of the court made on October 10, 1908, which appeal bond recites, in substance, among other things, the following: "That whereas said Carl Johnson, who is defendant in this cause, on the 9th day of October, 1908, recovered judgment in the Pulaski Circuit Court against the appellant in the sum of $6,000 and costs and the said defendant Railway Company appeal from said judgment, now if the defendant, the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company shall duly prosecute said appeal and pay the judgment that may be rendered against it in the Appellate Court of Indiana, then the bond shall be void, otherwise to remain in full force and effect; that said bond was endorsed as follows: No. 7180 Carl Johnson vs. P., C., C. and St. L. Ry. Co. Appeal Bond, Amount $8,000, filed Dec. 31, 1908. Frank Wittmer, Clerk Pulaski Circuit Court, George E. Ross, Attorney for defendants." (8) On October 18, 1909, appellant commenced this action against appellees by a complaint duly sworn to by George E. Ross, attorney for appellant, and in said complaint alleged "that on the 8th day of October, 1908, the plaintiff in this case, filed its motion and causes for a new trial; and after the filing of said mo-

tion and causes for a new trial and pending said motion and before said motion had been ruled upon, and without ruling on said motion of the defendant for a new trial, the said Pulaski Circuit Court, on said 8th day of October, 1908, entered a judgment in favor of said Carl Johnson and against this plaintiff, on said verdict of the jury, for the sum of $6,000 and that no other judgment or different judgment has ever been rendered in said cause; that afterwards, to wit, on the 15th day of November, 1909, the plaintiff filed a second paragraph of complaint not verified, wherein it alleges that said judgment was void; that no judgment had ever been rendered by the court and that the entry was simply the entry of the clerk, and, on the trial of said cause, to wit, on the 2d day of December, 1909, the plaintiff dismissed his cause of action as to said first paragraph of complaint."

On the foregoing facts the court announced the following conclusions of law: (1) That plaintiff, The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, is entitled to the relief prayed for in the second paragraph of complaint, that is, that defendants and each of them be forever enjoined from executing the execution now in the hands of defendant, William Sanders, sheriff of Pulaski county, Indiana, and that the plaintiff is entitled to recover its costs in this action.   (2)   That the judgment appearing of record in order-book No. 34, page 402, of the records of the Pulaski Circuit Court, and set out in finding No. 4, is a valid, subsisting judgment in favor of defendant and cross-complainant, Carl Johnson, and against plaintiff, The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, and that said judgment was duly and legally rendered by the Pulaski Circuit Court and entered of record by the clerk thereof; but that no execution may issue thereon until said judgment record is read and signed in open court.   (3) That the judgment and record entry in the case of Carl Johnson v. The Pittsburgh, Cincinnati, Chicago and St. Louis

Railway Company appearing in order-book No. 34, at page 402, of the records of the Pulaski Circuit Court, and set out in finding No. 4, should be and the same now is read and signed in open court *nunc pro tunc,* and said judgment may now be enforced by proper writ.

The first, second and eleventh of the above errors present in different form practically the same question, and may be disposed of together. It is insisted by appellant (1) that the cross-complaint does not grow out of and is not germane to the subject-matter of the complaint; (2) that the relief sought therein is such as could be obtained only in the original action, and hence not proper by way of cross-complaint in this action; (3) that a cross-complaint must not only arise out of the same subject-matter as the original action, but that it must also be between the same parties.

Without discussing the reasons urged by appellant in support of its contention, it is sufficient to say that practically the exact procedure here followed was approved by

1. the Supreme Court in the case of *Kent* v. *Fullenlove* (1872), 38 Ind. 522, which was a suit to enjoin the enforcement of an execution on a judgment signed by the judge in vacation, and before it had been read in open court. This case, so far as we have been able to find, has never been overruled, modified or criticised. Since the decision of the case just cited, the legislature passed an act (§1451 Burns 1908, §1331 R. S. 1881), which provides as follows: "In all cases where business of any kind has been or shall be transacted by any circuit or superior judge and put of record, and the judge, from death, resignation, or any other cause, has left or may leave the record of such proceeding or proceedings unsigned, the successor of such judge shall have the same power and authority to sign such record, at any subsequent term of the court, as if such record has been made by such judge." The evident purpose of this act was to meet a condition like, or similar to, that presented by the cross-complaint in this case, and furnishes additional authority

for the action of the trial court in permitting the filing of said cross-complaint. *Beitman* v. *Hopkins* (1887), 109 Ind. 177, 9 N. E. 720; *Mayer* v. *Haggerty* (1894), 138 Ind. 628, 38 N. E. 42.

The third error relied on, which calls in question the sufficiency of the second paragraph of answer to the second paragraph of complaint, may be disposed of by saying that this answer also substantially follows the answer in the case of *Kent* v. *Fullenlove, supra.* The court said with reference to the answers filed in that case that they "did not set up any matter which was a bar to the action. They admitted the facts to be substantially as alleged in the complaint. *Regarded, however, in the nature of motions or cross-complaints to have the record amended, by having it read and signed in open court, we are inclined to hold them sufficient.*" (Our italics.)

But, even if it could be said that the overruling of the demurrer to the answer in this case was error, it was rendered harmless by the court's finding for appellant on its complaint, and the rendition of the judgment thereon enjoining the levying of the execution on appellant's property. Such a ruling will furnish no ground for reversal. *Gilliland* v. *Jones* (1896), 144 Ind. 662, 43 N. E. 939, 55 Am. St. 210; *Walling* v. *Burgess* (1890), 122 Ind. 299, 22 N. E. 419, 23 N. E. 1076, 7 L. R. A. 481; *Vulcan Iron Works Co.* v. *Electric, etc., Min. Co.* (1913), 54 Ind. App. —, 99 N. E. 429, 100 N. E. 307; *Beasley* v. *Phillips* (1898), 20 Ind. App. 182, 50 N. E. 388.

Alleged errors four and five will be considered together. In support of the contention that the court erred in its second and third conclusions of law, it is insisted, in effect, (1) that no issue presented by the complaint and answer warrants either of said conclusions, and that each conclusion is inconsistent with the first conclusion, because if the judgment was valid appellant was not entitled to an injunction; (2) that it appears from the findings that the judgment at-

tempted to be rendered was rendered after the filing of the motion for a new trial, and while the same was pending and undisposed of, and that a judgment so rendered "was ineffective for any purpose, * * * and absolutely void;" (3) that as to the third conclusion of law, the court had no jurisdiction of the subject-matter, and therefore "no power in this action to adjudge and decree or to make said entry in order-book 34, page 402, an entry of proceedings had in that cause, or to cause the same to be read in open court, and then sign it *and make it an entry nunc pro tunc in said cause;*" that such conclusion is "inconsistent with and in irreconcilable conflict" with conclusion one.

In answer to that part of the first ground of appellant's objection that the conclusions in question are outside the issues tendered by the complaint and answer, it is sufficient to say that they are not outside the issues tendered by the cross-complaint and answers thereto, and if we were right in holding that the court below properly permitted the filing of such cross-complaint, it follows that this ground of appellant's objection is not tenable.

As to the remaining ground of this first contention, we think it fails to distinguish between an invalid or void judgment and a judgment merely irregular, because it lacks the authentication, necessary under the statute, to support an execution issued thereon. For the purposes of an execution a judgment must be read and signed by the judge of the court rendering the same. This is so by reason of §1450 Burns 1908, Acts 1885 p. 124, which provides, in substance, that the clerk shall draw up each day's proceedings at full length on the proper order-book; that the court shall cause the same to be read in open court, after which the same shall be signed by the judge, and that "no process shall issue on any judgment or decree of court until it shall have been so read and signed." The rendition of the judgment by the court, its entry on the order-book by the clerk, and its final approval and authentication by the

judge's signature, after it has been read in open court, are separate, independent acts, all of which may be necessary under the above statute to support an execution issued on such judgment. It does not follow, however, that all of the above steps are necessary to the validity of a judgment. *Anderson* v. *Mitchell* (1877), 58 Ind. 592; *Pittsburgh, etc., R. Co.* v. *Johnson* (1911), 49 Ind. App. 126, 93 N. E. 683, 95 N. E. 610.

The purpose of the reading and signing is to verify and approve the record entry, and see that it correctly sets out the judgment before announced and rendered by the court, and the judge's signature thereto is required as certification and authentication that the judgment as entered was in fact rendered by the court.

A judgment entered of record and not signed is not necessarily invalid or void, depending on whether the judgment was in fact rendered by a court with jurisdiction and authority to render the same. *Catterlin* v. *City of Frankfort* (1882), 87 Ind. 45, 56; *Griffith* v. *State* (1871), 36 Ind. 406, 408; *Jaqua* v. *Harkins* (1907), 40 Ind. App. 639, 82 N. E. 920; *Pittsburgh, etc., R. Co.* v. *Johnson, supra.* But, under the law, the signature thereto of the judge of the court which rendered the judgment furnishes the evidence of its rendition and the authentication thereof necessary to support an execution issued thereon. §1450 Burns 1908, Acts 1885 p. 124; *Griffith* v. *State, supra;* 23 Cyc. 850; *Pittsburgh, etc., R. Co.* v. *Johnson, supra.*

The legislature by passing §1451 Burns 1908, §1331 R. S. 1881, providing that a judgment may be signed at any subsequent term of court, after its rendition, recognized that an unsigned judgment was not void, because if void there was no necessity for such an act.

The facts found show that a valid judgment had in fact been rendered by the court on October 8, 1908, but that the same had not been read in open court and signed by the judge thereof in term, and for this reason,

under the above authorities, conclusion of law No. 2 was proper and consistent with conclusion No. 1.

As to the second ground of contention above, appellant is in error in assuming that a judgment rendered after a motion for new trial is filed, and while such motion is pending undisposed of, is absolutely void. The authorities cited by appellant on this subject are to the effect that so long as a motion for a new trial remains undisposed of, there can be no final judgment within the meaning of the statute regulating appeals. *Colchen* v. *Ninde* (1889), 120 Ind. 88, 22 N. E. 94; *New York, etc., R. Co.* v. *Doane* (1886), 105 Ind. 92, 4 N. E. 419. These authorities lend no support to appellant's position, but simply hold, in effect, that the undisposed-of motion for a new trial operates to suspend the effect and enforcement of the judgment only during the pendency of such motion, implying that the judgment is valid and will become effective and enforceable after such motion has been overruled. In this connection see *Davison* v. *Brown* (1896), 93 Wis. 85, 87, 67 N. W. 42; *Pittsburgh, etc., R. Co.* v. *Johnson, supra.*

The third ground of appellant's contention also proceeds on an erroneous assumption, viz., that the court adjudged and decreed *"and made said entry in order-book No. 34, page 402, an entry of proceedings had in that cause,* or after having caused the same to be read and signed in open court, *made it an entry nunc pro tunc."* The theory of the finding of facts and the conclusions of law, as we understand them, is that the judgment had already been rendered, and that it had been properly entered by the clerk, but had not been read and signed, that there was no necessity for a *nunc pro tunc* rendition of the judgment, or for a *nunc pro tunc* entry of the same, but that the reading and signing alone should be *nunc pro tunc.* With this view, the court's conclusions of law are consistent throughout and supported by the finding of facts. The judgment being unsigned, it would not, by reason of an ex-

press statute, support the execution, and therefore the first conclusion of law was correct. It being found that the judgment had in fact been rendered and entered but not signed, the second and third conclusions of law were warranted, and were entirely consistent with No. 1 and with each other. This second conclusion may be open to the criticism that it is in part in the nature of a finding of fact rather than a conclusion of law, but that part which is a conclusion of law is justified by the facts found and entirely consistent with conclusion No. 1.

It may be open to doubt whether it is strictly and technically accurate to say that the manual signing of a judgment after term by the trial judge, under the authority of §1451, *supra*, is a signing *nunc pro tunc*, but for the purposes of the questions here presented, this language in the conclusion of law and in the pleading was not of controlling importance. The questions involved are whether the facts of this case warranted the trial court in having such record read and signed, and whether when so read and signed it was effective from its rendition.

When considered in connection with the statute and decisions, there was no inconsistency between the conclusion that the enforcement of the present execution should be enjoined, and the conclusion that the judgment was valid and "should be and is now read and signed in open court *nunc pro tunc* and said judgment may now be enforced by proper writ."

The execution, the enforcement of which was enjoined, was issued before signing the judgment, and, therefore, under the statute could not be enforced. Said §1451, 8. *supra,* authorized the court to cause the judgment to be read and signed, which the court did, and then authorized its enforcement by proper writ. The reading and signing of the judgment gave it the regularity that authorized its enforcement by execution as of the date of its rendition. *Mayer* v. *Haggerty* (1894), 138 Ind. 628, 631, 38 N.

E. 42; *Kraus* v. *Lehman* (1908), 170 Ind. 408, 426, 83 N. E. 714, 84 N. E. 769, 15 Ann. Cas. 849; *Pittsburgh, etc., R. Co.* v. *Johnson, supra.*

In support of its contention that the court erred in overruling the motion for new trial, it is first insisted that "oral testimony alone will not be sufficient on which to make an entry *nunc pro tunc* after the case has ceased to be *in fieri,*" and in this connection counsel assert that "there is no evidence except the oral testimony of M. M. Hathaway that any judgment was ever rendered, hence nothing to sustain that part of the findings that a judgment was rendered."

Numerous authorities are cited to support the legal proposition relied on, but the trouble with appellant's position is not in its proposition of law, but in its assumption

9. that there was "no evidence except the oral testimony of M. M. Hathaway" that any judgment was ever rendered. In this connection appellant insists that parts of several of the findings are not sustained by sufficient evidence. Without setting out the several parts of the findings questioned, we will indicate enough of the evidence to show that there was some evidence to support every material part of each and all the findings made by the court. Page 402 of order-book 34 of the Pulaski Circuit Court was read in evidence. The caption of this order is as follows:

"September Term, 1908. October 8, 28th day. Carl Johnson vs. P. C. C. & St. L. Railway Company. No. 7180."

The body of the order is just as set out in finding No. 4 above. This, we think, was some record evidence of the rendition and entry of the judgment.

There was read in evidence the order-book entry of October 10, 1908, which is as follows: "Carl Johnson vs. P. C. C. & St. L. Railway Company. No. 7180.

Come now again the parties, by counsel, and motion by defendant for new trial is overruled, to which ruling of the court defendant excepts and 90 days given in which to

file bill of exceptions. The defendant now prays an appeal to the Appellate Court which is granted upon filing bond in the sum of $8,000 with the American Surety Company as surety within 90 days.''

This order shows a prayer for appeal granted, and the fixing of the amount and sureties of the appeal bond. This entry contained no judgment. The trial court had a right to infer from this item of evidence that appellant would not do a foolish or useless thing, and appeal merely from the ruling on a motion for a new trial, but that it was appealing from a final judgment before rendered.

The appeal bond given by appellant was also offered and read in evidence, which was the usual appeal bond given in such cases and contained among its other provisions the following: ''The condition of the above obligation is such, that whereas, heretofore, to wit: On the 9th day of October, 1908, the said Carl Johnson in the Pulaski Circuit Court, recovered a judgment against the said The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company for the sum of six thousand dollars, in damages and costs of suit, etc., from which said judgment of said Pulaski Circuit Court, the said The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company appeal to the Supreme Court of Indiana. Now the said The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company shall and will duly prosecute said appeal, and abide by and pay the judgment and costs, which may be rendered or affirmed against it then the above obligation to be null and void, otherwise to be and remain in full force and virtue in law. The Pittsburgh, Cincinnati, Chicago and St. Louis Railway (seal) Company by G. E. Ross, Solicitor The American Surety Company (seal) of New York by John F. Brookinger, (seal), Its Attorney in fact.'' This bond is indorsed as follows: ''No. 7180. Carl Johnson vs. The P. C. C. & St. L. Ry. Co. Appeal Bond.

Amount $8,000.   Filed in open court, Dec. 31, 1908.   Frank Wittmer, Clerk Pulaski Circuit Court.   (Recorded.)   G. E. Ross, Attorney for Deft.''

It was admitted by appellant and appellee that this bond is the appeal bond which was filed on December 31, 1908, in cause No. 7180 in the Pulaski Circuit Court.   This bond expressly recognizes that a judgment had been before rendered in the case.   True, it refers to a judgment rendered on October 9 instead of October 8, and indicates that the appeal was to the Supreme Court instead of the Appellate Court, as provided by order granting the appeal.   At all events this bond was some evidence from which the trial court might infer that a judgment had been in fact rendered in the case sometime before October 10, 1908, and after the rendition of the verdict on October 4, 1908.

The above indorsement on the appeal bond and other various entries showed that George E. Ross was one of appellant's attorneys, representing it at various steps and stages of the original action.   The original complaint on which the restraining order was granted herein was introduced and read in evidence.   It was a verified complaint sworn to by George E. Ross and contained the averments as found by the court in its finding of facts, No. 8 above. The theory of this complaint at the time it was filed and sworn to was that the court in said original action did render judgment on October 8, 1908, but that the same was rendered after a motion for a new trial had been filed, and while such motion was pending undisposed of, and for this reason the judgment was invalid and void.

The oral testimony of Mr. Ross shows that this original complaint sometime later, and when the second paragraph was filed, was amended, with the consent of the court, by inserting the words ''clerk of the'' before the words ''Pulaski Circuit Court,'' but that the same was never resworn to.   The complaint as amended showed that the clerk

of the court entered the judgment, and that no other or different judgment was ever rendered in said cause. There was also offered and read in evidence the record of said judgment contained in the judgment docket of said court, which entry is that usually contained in a judgment docket, showing, under the usual headings, the number of the cause —7180; attorneys—Hathaway and Winfield; O. B. 402 F. B. U. page 96. Parties—Carl Johnson v. P. C. C. & St. L. Ry. Co.; against whom judgment is rendered—defendants; amount of judgment and costs—$6,000 and costs; date of rendition—October 8, 1908.

In addition to the record and documentary evidence above indicated, there was oral evidence as follows: M. M. Hathaway testified that he was one of the attorneys for appellee Johnson in the original case against appellant, viz., No. 7180 in the Pulaski Circuit Court; and among other answers he made the following: "The rulings of the court were as they appear in that order-book; that is the order-book entry Judge Ross, that you and I compared. * * * The court announced his rulings from the bench, just as they appear in that order-book, and I prepared the order-book entry. * * * As attorney for the plaintiff I orally made a motion that the court * * * render judgment on the verdict by the jury and the court announced from the bench that the motion was sustained and judgment on the verdict, is the substance of what he said. * * * I prepared the order-book entry in the matter. I have it with me. It was that among the files and papers here. I prepared the order-book entry and handed it to Judge Nye, and he, after reading it, to the clerk of this court * * *. Judge Burson, [one of the appellant's attorneys in the trial of the case] was present at the time the judgment was rendered. This order-book entry was among the papers in the case."

Appellant's witness, M. J. O'Connell, the deputy clerk who made the entry in the order-book, testified, among other

things, that the entry was prepared for her by the attorney for appellee; that she thought Mr. Hathaway gave her the entry; she also identified exhibit No. 4 as the paper furnished her by Mr. Hathaway, and testified further, in substance: That is where the court signed on the morning of October 8. There are two paragraphs of the record that have not been signed, and was the entry of the proceedings of October 8. She prepared the entry from an entry furnished by Mr. Hathaway.

This prepared entry was introduced in evidence, and is the same as of the record entry above of date October 8, 1908. The clerk testified: "I was in court * * * I remember about the judgment being entered. I remember there was a judgment but I paid no particular attention to it."

John C. Nye, the trial judge, testified. He identified his signature to the record at bottom of page 401 of order-book 34, and said with reference to the same: "I signed it in the belief I was signing the day's proceedings. * * * I can say clearly this: that when I put my signature there it was my intention to sign the proceedings of the day and I thought I was doing so."

We think we have indicated enough of the evidence to show that every finding had at least some evidence to support it. It is admitted by both parties, and in fact appellant bases its contention on the fact, that this entry of October 8, 1908, purporting to be a judgment, is the only judgment ever entered in the case. From some judgment appellant prayed an appeal to the Supreme Court. The appeal was granted conditioned on the filing of a bond in the sum of $8,000 as directed by the court. On December 31, 1908, appellant filed its appeal bond as directed by the court, reciting therein that judgment had been rendered in said cause on October 9, 1908. By this bond, recognizing said judgment and the appeal therefrom, appellant ob-

tained a stay of execution; and allowed the year to go by without appeal, and then when appellee caused an execution to be issued on said judgment, appellant filed its complaint under oath, alleging therein that judgment was rendered in said cause on October 8, 1908, but that such judgment was rendered pending a motion for a new trial, and before the same had been ruled on, and for this reason such judgment was void. We have this and other items of record evidence supporting the court's finding. In addition, we have the entry prepared by appellee's attorney Hathaway, given to the court and found with the files, though not itself filed, and the testimony of Hathaway and the other witnesses.

But it is insisted that the court erred in admitting the evidence of M. M. Hathaway, that a record entry may not be proven by oral testimony. It is true that as a general rule a *nunc pro tunc* entry cannot be made on oral testimony alone. Counsel cite no authorities, and we have been unable to find any, that go to the extent of holding that the correctness of a record entry entered in the proper record kept for the purpose by the clerk of the court, whose duty it was to make the same, when itself offered in evidence in connection with other entries and files tending to prove its correctness, may not also be supported by oral testimony. But if it be conceded that appellant is right in its contention that such entry should be based solely on record and documentary evidence on file in the case, there would certainly be as good or better reason for applying the same rule to evidence tending to dispute the entry or its correctness. Appellant in this case, to make his case in chief, introduced both the clerk of the court and his deputy, and tried to show by them that the entry was made by the deputy clerk in vacation without the sanction or authority of the court, and that the judgment contained in the entry was never in fact announced or rendered by the court in open court

He who invites error may not take advantage of it on

appeal. *Nitche* v. *Earle* (1889), 117 Ind. 270, 275, 19 N. E. 749; *Perkins* v. *Hayward* (1890), 124 Ind. 445, 449, 24 N. E. 1033; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 563, 37 N. E. 343; Elliott, App. Proc. §628.

The evidence of John C. Nye, above quoted, was objected to and a motion made to strike out the same. These rulings are relied on as error.

The finding and judgment herein in favor of appellant on his complaint show that the trial court wholly disregarded the intent and belief of the witness, and in fact found that the judge's signature appearing on page 401 of the entry was placed there in vacation, before the judgment and not after it, and that the judgment would not support an execution until read and signed, so that any error in the admission of that part of the evidence which might be said to be objectionable was rendered harmless by the finding and judgment. Such an error will not work a reversal of a case. *Vulcan Iron Works Co.* v. *Electric, etc., Min. Co., supra,* and cases cited.

Finally, appellant insists that the court erred in overruling the several specifications of its motion to modify the judgment. These several assigned errors present in a different form questions already considered, and for the reasons herein indicated in discussing the other errors relied on we think no reversible error is presented by any of the several specifications. We find no reversible error in the case and are of the opinion that the judgment of the lower court was authorized both by the evidence and the law.

Judgment affirmed.

NOTE.—Reported in 99 N. E. 508. See, also, under (2) 31 Cyc. 358; (5) 38 Cyc. 1986; (6) 23 Cyc. 784; (10) 23 Cyc. 845; (11) 3 Cyc. 242; (12) 38 Cyc. 1411. As to *nunc pro tunc* entries of judgment, see 4 Am. St. 828. As to the facts or conditions that render a judgment void, see 29 Am. St. 78. As to injunction against execution sale generally, see 111 Am. St. 97. As to stay, otherwise than statutory, of execution and what court may direct, see 127 Am. St. 712.